**Larry D. WOOLEY, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 61S00–9806–CR–354.

Supreme Court of Indiana.

Sept. 29, 1999.

Rehearing Denied Dec. 15, 1999.

Larry Crawford Thomas, Clinton, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Randi E. Froug, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Larry Wooley was convicted of the murder of Claude "Bobby" Strow. The trial court sentenced Wooley to sixty-five years imprisonment. In this direct appeal Wooley argues that:

(1) he is entitled to discharge under Criminal Rule 4(C) or 4(D);

(2) the trial court erred when it modified his tendered instruction on self-defense;

(3) the trial court erred when it excluded portions of his expert's testimony;

(4) the evidence is insufficient to support his conviction based on two intervening causes;

(5) the State failed to disprove his claim of self-defense beyond a reasonable doubt; and

(6) his sentence of sixty-five years is manifestly unreasonable because it is not based on proper aggravating circumstances and the trial court improperly failed to find mitigating circumstances.

We affirm the conviction but remand for a new sentencing hearing.

### Factual and Procedural Background

On August 20, 1996, Wooley, his brother Richard Wooley ("Richard"), Angela Hutson, and three others went to the home Strow shared with Rhonda Dalton. When they arrived, Dalton met them in the yard and told them that her legs were bleeding because Strow had hit her with a hose. All witnesses, including Wooley, agree that he and Richard went into the house with Dalton to talk to Strow shortly after they arrived and that Wooley returned to the house one or more times after an initial encounter with Strow. Strow did not survive, Richard did not testify and the three companions left shortly after the first incident. Wooley, Dalton and Hutson offered differing accounts of the day's events.

Wooley claims that he and his brother entered the house and spoke with Strow for several minutes before Strow pulled a knife from his pocket. Richard succeeded in kicking the knife out of Strow's hand and punched Strow in the face, resulting in a bloody nose. Wooley then kicked Strow in the face. After this altercation, Wooley and Richard went back outside to drink beer while Dalton attended to Strow.

Wooley returned to the house [1] sometime after the first incident and Strow asked him to shake hands. When he approached Strow, Strow pulled a knife. Wooley hit Strow in the forehead several times and as the two struggled the knife went into Strow's neck. When Wooley left the house, Hutson gave him a white jug and told him to pour the liquid on the porches of the house which he did. He and Hutson then left in one of Strow's trucks.

According to Dalton, after she told Wooley and Richard that Strow hit her with a hose, the two brothers wanted to go into the house and "kick [Strow's] ass" and "teach him a lesson." She followed Wooley and Richard into the house and saw Strow pull his cigarette lighter, not a knife, from his front pocket during the first encounter. She saw Richard and Wooley each kick Strow and then leave the house. Dalton eventually returned to the group outside where she heard Wooley threaten to "finish off" Strow. When Wooley returned to the house, Richard held Dalton on the ground and kicked and choked her. After Richard released her, Dalton went into the house and discovered Strow on the couch bleeding from the neck. Strow told her that Wooley had "killed" him and asked her to get help. While she was still in the house, Dalton saw Wooley pouring liquid on the porches of the house and then leaving with Hutson in one of Strow's trucks.

According to Hutson, soon after Wooley went into the house the second time he called for her. She went to the door of the house and saw Wooley kicking Strow and hitting him on the head with a mason jar while complaining "he won't die." At that point Wooley told Hutson to tell Richard to kill Dalton. After Hutson relayed this message she observed Wooley lift a knife over his head and bring it down on Strow. Hutson testified that she could not see

where Wooley stabbed Strow because Wooley was between her and Strow, but she knew it was near Strow's face. After Wooley stabbed Strow, he told Hutson to go to the shed to get a gasoline can, which she did. Wooley then poured the contents on the porches and the walls of the house and attempted unsuccessfully to ignite it before Hutson and Wooley left in one of Strow's trucks.

The State charged Wooley with murder, attempted murder and attempted arson. At trial Wooley argued that two intervening causes relieved him of responsibility for the murder. First, he contended that after he stabbed Strow in the neck Dalton attacked Strow, stabbed Strow in the same place that Wooley had stabbed him, and hit Strow on the head with several objects. In support of this theory Wooley offered evidence that Strow had been hit on the head with a mason jar and a telephone receiver, that only Dalton's fingerprints were found on the mason jar, and that a knife with Strow's blood on it was found in Dalton's shorts. Second, Wooley asserted that Strow received "grossly negligent" medical treatment at the hospital. He offered the testimony of the emergency room nurse in support of this theory. Finally, Wooley claimed that he stabbed Strow in self-defense.

The jury found Wooley guilty of murder and not guilty of attempted murder and attempted arson. The trial court sentenced Wooley to sixty-five years imprisonment.

## I. Discharge under Criminal Rule 4

■ Wooley contends that he should have been discharged because the State failed to bring him to trial within one year in violation of Criminal Rule 4(C). Wooley is correct that the time limitations found in Criminal Rule 4 protect a defendant's right to a speedy trial as guaranteed by Article I, Section 12, of the Indiana Constitution.[2]

1. Wooley testified that he returned to the house several times. It was only during the first and last trips that Wooley encountered

Strow. The other trips into the house are not relevant to this appeal.

2. Although the right to a speedy trial is also guaranteed by the Sixth Amendment to the

A defendant who is not brought to trial within twelve months must be discharged and the charge must be dismissed. Ind. Crim. Rule 4(C); *see also Bates v. State,* 520 N.E.2d 129, 131 (Ind.Ct.App.1988). However, if a defendant "seeks or acquiesces in any delay which results in a later trial date, the time limitations of the rule are also extended by the length of those delays." *Isaacs v. State,* 673 N.E.2d 757, 762 (Ind.1996); *see also* Crim. R. 4(F).

Wooley was arraigned on August 22, 1996, and trial was set for December 17, 1996. On December 12, 1996, Wooley moved for a continuance alleging that the State had failed to comply with discovery requests. The court reset the trial for May 13, 1997. On May 12, 1997, Wooley again filed for a continuance, again alleging failure of the State to provide evidence. The court reset the trial for June 24, 1997. On June 12, 1997, Wooley moved for a continuance, in part based on an illness in defense counsel's family. The court reset the trial for November 6, 1997, and stated that the delay was attributable to the defendant. On October 27, 1997, Wooley again moved for a continuance. The court reset the trial for January 6, 1998, by an order, to which there was no objection, finding that Wooley "acknowledges he understands the delay in the trial will be attributable to [him], thereby waiving any objection to the trial setting at a later date."

The first 117 days between the arraignment and the December 17, trial date count toward the one year allotted to the State to bring Wooley to trial. Wooley does not dispute that the time from June 24, 1997, to January 6, 1998, serves as an extension of the one-year period. *See Isaacs,* 673 N.E.2d at 762; Crim. R. 4(F) (when a continuance is had on the motion of the defendant any time limitation contained in this rule shall be extended by the amount of the delay). Wooley argues that

the delays between these two periods, i.e., from December 17, 1996, until June 24, 1997, although based on his motions to continue, are properly attributed to the State because it was the State's failure to comply with discovery requests that prompted his motions. Even if we accept Wooley's argument that the 189 day delay from December 17, 1996, to June 24, 1997, did not extend the one-year period because of the State's failure to comply with discovery requests, only 306 days before January 6, 1998, are attributable to the State.

■ On January 6, 1998, the State moved to continue the trial under Criminal Rule 4(D), which permits extension of the time limits for witness unavailability under certain conditions. The trial court granted the motion and found that:

> Angela Hutson is a material witness to the State of Indiana. The court is satisfied that there is evidence for the State which cannot be had and that reasonable efforts have been made to procure the same and there is just ground to believe that such evidence can be had within ninety (90) days.

The court then set the trial for March 24, 1998 and warned the State that Wooley may be discharged if he was not brought to trial on March 24. Wooley contends that the seventy-seven day delay of his trial from January 6, 1998, to March 24, 1998, resulted in his being held for 383 days in violation of Criminal Rule 4(C). However, the Rule 4(D) ninety day period extends the one-year time period found in Criminal Rule 4(C). *See* Crim. R. 4(D); *Woodson v. State,* 466 N.E.2d 432, 433–34 (Ind.1984); *Sims v. State,* 267 Ind. 215, 220, 368 N.E.2d 1352, 1354 (1977).

■ Wooley claims that the trial court erred in granting the State's Rule 4(D) motion because the State had not made a "reasonable effort" to secure Hutson's attendance on January 6. This claim is

United States Constitution, Wooley does not argue that his federal constitutional rights have been violated.

based on the admission by the officer who served the subpoena on the witness "that he did not follow the proper procedure for service" and because there was "a possibility that Hutson would be there to testify on January 9th the date set out in the subpoena."

■ "The absence of a key witness through no fault of the State is good cause for extending the time period requirements." *Woodson*, 466 N.E.2d at 434 (witness hospitalized); *see also Fortson v. State*, 269 Ind. 161, 167, 379 N.E.2d 147, 151–52 (1978) (witness who escaped from jail was not yet captured); *Sims*, 267 Ind. at 220, 368 N.E.2d at 1354–55 (witness out of the country on a long-planned vacation). On the day of trial, January 6, 1998, Hutson was not in Indiana despite her previous assurances to the State that she would be. The record indicates that the State knew Hutson was out of the state and had made arrangements for her return. Indiana State Police Officer Charles Bollinger testified that on the two occasions he spoke with Hutson about returning to Indiana for Wooley's trial, she stated she would return. Officer Bollinger made arrangements for Hutson to return to Indiana by plane on January 5, 1998. He relayed the flight information to Hutson, but she did not board the flight. We think it reasonable for law enforcement officials to rely on the assurance of a witness that she will appear, especially after making specific transportation plans for the witness. A contrary rule would require precautionary expense to secure out-of-state service that would prove unnecessary in the great majority of cases. Accordingly, Hutson's absence, despite the State's efforts in securing her appearance, was sufficient cause for extending the time period requirements. Wooley argues that the trial court's January 6, 1998, ruling was in error because Hutson was in fact in Indiana on January 9, 1998. Wooley does not explain how the State could have known on the day the trial was to begin that Hutson would arrive three days later.

The trial court did not err in granting the continuance based on the information available to it and the State on January 6, 1998.

■ Finally, Wooley argues that the trial court erred in granting extensions to the State from March 24, 1998, to March 30, 1998, and April 6, 1998, the actual day of trial. He argues that once the March 24, 1998, trial date arrived, the State was not entitled to another extension without a showing of unavailability of evidence. Wooley points to no authority in support of his position that the State may not continue a trial within the ninety day period after a Rule 4(D) extension has been granted. The Rule provides that if a defendant is "not brought to trial by the state within such additional ninety (90) days, [the defendant] shall be discharged." Wooley was brought to trial within that ninety-day period. The Rule does not, as Wooley contends, preclude additional extensions of a setting within the ninety day period. Otherwise stated, the trial court is not bound by its own self-imposed deadlines as long as the parameters established by the Rule are met. Accordingly, there was no error in the trial court's decision to grant the State additional time within the ninety days to respond to this motion and the ensuing orders. Because Wooley was brought to trial within ninety days of the State's motion under 4(D), he is not entitled to discharge.

## II. Self–Defense Instruction

Wooley argues that the trial court committed reversible error when it gave the following instruction:

The defense of self-defense is defined by law as follows:

a. A person is justified in using reasonable force against another person to protect himself from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reasonably believes that that force is

necessary to prevent serious bodily injury to himself or the commission of a felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting himself by reasonable means necessary.

. . .

d. A person is not justified in using force if:

. . .

3. He has entered into combat with another person or is the initial aggressor, unless he withdraws from the encounter and communicates to the other person his intent to do so and the other person nevertheless continues or threatens to continue unlawful action.

▪ The State has the burden of disproving this defense beyond a reasonable doubt. Specifically, Wooley argues that the court erred when it modified his tendered instruction by adding the language found in Indiana Code § 35–41–3–2(d)(3) to Wooley's tendered instruction which included only subsection (a). The instruction given by the trial court is a verbatim extract from the statute defining self-defense and the pattern jury instruction. The only omitted portions, two subsections based on protection of one's dwelling, are irrelevant to this case. The State's burden to disprove the defense was also added to the statutory language, but this presents no issue because it was also included in Wooley's tendered instruction.

▪ In reviewing a trial court's decision to give or refuse tendered instructions, the Court considers: "(1) whether the instruction correctly states the law; (2) whether there was evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given." *Wright v. State*, 690 N.E.2d 1098, 1109 (Ind.1997).

▪ Wooley's contention at trial and on appeal is that the instruction is not a correct statement of the law. Specifically, he makes the unusual argument that the law on self-defense is incorrectly codified at Indiana Code § 35–41–3–2. Wooley objected to this instruction as both a preliminary and final instruction:

We do not believe that is a correct statement of the law, especially case law. We believe that the legislature made a mistake when they printed statute 35–41–3–2 on paragraph (d)(3) and we believe that paragraph should have read, he has entered in to combat with another person and is the initial aggressor and it should have been "and" instead of "or" there and if that was done that would be in complete compliance with all the cases that have come down on this.

▪ As a general matter, it is not error to instruct the jury consistent with applicable statutes. *See Roche v. State*, 690 N.E.2d 1115, 1128 (Ind.1997) (trial court did not err in giving jury instruction consistent in all respects with the statute); *Hough v. State*, 690 N.E.2d 267, 274 (Ind. 1997) *cert. denied* —— U.S. ——, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998) (instruction that was a paraphrase of the statute was not error). Moreover, an instruction that includes a verbatim statement from the statute is an "objective statement of the law" and is "more likely to aid the jury in reaching a verdict favorable to the law." *Smith v. State*, 403 N.E.2d 869, 875 (Ind. Ct.App.1980). Although there are instances, for example an internally inconsistent statute, when courts are required to perform some replacement or removal surgery on statutes, this is not one of them. The legislature has chosen to require both an "initial aggressor" and those who "enter into combat" (i.e., mutually willing combatants) to declare an armistice before they may claim self-defense. This is a rational legislative policy and the language of the statute captures it. The section is therefore not subject to judicial amendment. The trial court's instruction was proper because it was a correct statement of the law, evidence at trial supported it and it was not duplicative of another instruction.

■ Finally, Wooley argues that the self-defense statute is "unconstitutionally vague because one does not know what a person must do to satisfy the statute, and the court by giving this instruction misled the jury on the applicable law, thereby prejudicing the defendant." This is the sum total of Wooley's argument on this issue. This paragraph falls well short of Appellate Rule 8.3(A)(7)'s requirement that "[t]he argument shall contain the contentions of the appellant ... the reasons in support of the contentions along with citations to the authorities, statutes and parts of the record relied upon, and a clear showing of how the issues and contentions ... relate to the particular facts of the case." Without more, Wooley's argument that the instruction and the statute are unconstitutionally vague cannot be evaluated and is waived. *See Anderson v. State*, 699 N.E.2d 257, 260 n. 2 (Ind.1998).

## III. Expert Testimony

■ Wooley argues that the trial court abused its discretion when it refused to permit Susan Gehring, an emergency room nurse, to testify that Dr. Crockett, the doctor who treated Strow on the night he died, was "grossly negligent." As discussed in Part IV *infra*, it is Wooley's contention that there were two intervening causes that relieved him of liability for Strow's death, one of which was the "grossly negligent" medical treatment Strow received. The trial court permitted Gehring to testify as an expert that the procedures in the emergency room were "abnormal." Gehring was of course free to testify to what she saw and heard. But the trial court correctly held that she is not qualified to express an opinion on a physician's "gross negligence."

■ Indiana Rule of Evidence 702 allows testimony by experts where specialized knowledge will assist the trier of fact and the expert is qualified by knowledge, skill, experience, training or education. Whether or not an expert witness meets these requirements and should be allowed to testify is within the discretion of the trial court. *Roach v. State*, 695 N.E.2d 934, 939 (Ind.1998), *reh'g granted on other grounds*, 711 N.E.2d 1237 (Ind.1999).

■ Crockett's treatment of Strow was negligent only if, measured by the standard of care that applied to an emergency room doctor in the same situation, he did not exercise ordinary skill and care. *See Bonnes v. Feldner*, 642 N.E.2d 217, 220 n. 1 (Ind.1994); *Bassett v. Glock*, 174 Ind. App. 439, 368 N.E.2d 18, 22 (1977). In general, the use of suitable professional skill must be proven by testimony of other physicians or surgeons. *Stryczek v. Methodist Hospitals, Inc.*, 694 N.E.2d 1186, 1189 (Ind.Ct.App.1998) (a nurse has neither the same training or education as physicians and despite extensive experience in nursing is not qualified as an expert with respect to care by a physician). Wooley does not contend that Gehring has training, education or experience as an emergency room doctor, only that she has an extensive experience as an emergency nurse. Accordingly, the trial court did not abuse its discretion in concluding that this experience was insufficient to qualify her as an expert on the standard of care for a doctor.

## IV. Intervening Causes

Wooley argues that there was insufficient evidence to sustain the murder conviction because of two "intervening and superseding" causes. Wooley's theory at trial was that both Dalton's attack on Strow after Wooley stabbed Strow and the emergency room doctor's grossly negligent care of Strow were intervening causes sufficient to relieve him of criminal liability.

■ In reviewing a sufficiency of evidence claim, we do not reweigh the evidence or assess the credibility of witnesses. *Gant v. State*, 668 N.E.2d 254, 255 (Ind.1996). Wooley's conviction will be affirmed if the probative evidence and reasonable inferences drawn could have allowed a reasonable jury to find him guilty

beyond a reasonable doubt. *Anderson v. State,* 699 N.E.2d 257, 261 (Ind.1998); *Wooden v. State,* 657 N.E.2d 109, 111 (Ind. 1995). Wooley does not deny that he stabbed Strow in the neck. Instead, he argues that there was insufficient evidence to support the jury's rejection of his asserted intervening causes implicit in its guilty verdict.

■ An intervening cause is an independent force that breaks the causal connection between the actions of the defendant and the injury. *Spencer v. State,* 660 N.E.2d 359 (Ind.Ct.App.1996). In order for an intervening cause to break the chain of criminal responsibility, it must be so extraordinary that it would be unfair to hold the appellant responsible for the actual result. *Sims v. State,* 466 N.E.2d 24, 26 (Ind.1984). In all other cases, "[a]n individual who inflicts injury upon another is deemed by law to be guilty of homicide if the injury contributed mediately or immediately to the death of that person." *Id.* at 25.

■ Wooley contends that the mason jar and telephone receiver with Strow's blood are evidence that Dalton beat Strow with each after Wooley stabbed Strow. However, the physician who performed the autopsy testified that Strow died from blood loss from the stab wound on his neck. Whether or not Dalton struck Strow with the mason jar and the telephone receiver, these blows were not the cause of death and do not relieve Wooley of responsibility. Wooley also speculates that Dalton stabbed Strow after he did. He offers the fact that a knife with Strow's blood on it was in her back pocket when the EMTs arrived. The autopsy physician testified that the v-shaped stab wound was caused by a single knife inserted at one angle and removed at a second. On cross examination, the physician testified that it was theoretically possible that the wound was made by two very carefully inserted blades but that it was highly unlikely that Strow would have held still while a second incision was made. Dalton denied that she either hit or knifed Strow.

■ Next, Wooley contends that if Strow had not received grossly negligent medical care, he would not have died. He points to no evidence in support of this contention. The autopsy physician testified that Strow died from the stab wound, not from the care he received in the emergency room. In other cases we have held a defendant responsible even where the cause of death was not the initial injury but a result of medical care received after the injury. In *Sims,* we affirmed the defendant's conviction for murder where the defendant beat the victim, the victim required surgery and later died of pneumonia resulting from a surgical infection. *Id.* Because the surgery was necessitated by the injury inflicted by defendant, the intervening cause of surgery was not extraordinary and thus it was not unfair to hold defendant responsible. *Id.* at 26; *see also Pittman v. State,* 528 N.E.2d 67 (Ind.1988) (defendant's homicide conviction affirmed where victim died of surgical complications); *Gibson v. State,* 515 N.E.2d 492 (Ind.1987) (defendant responsible for child's death where defendant beat child necessitating brain surgery and child died of staph infection which resulted from her surgery and hospitalization); *Thomas v. State,* 436 N.E.2d 1109 (Ind.1982) (defendant's murder conviction affirmed where victim died of heart attack following robbery). In this case, the injury inflicted by Wooley was certainly a "mediate or immediate" cause of death. Even if we accept Wooley's argument that Strow received inadequate medical care, Strow's treatment was necessitated by the injury inflicted by Wooley and thus was not so extraordinary as to relieve Wooley of responsibility.

At best, Wooley offers speculation and weak circumstantial evidence as to Dalton's actions and the emergency room doctor's treatment. The jury was entitled to credit this evidence or not. There was certainly no showing of overwhelming evidence of extraordinary intervening causes

sufficient to break the chain of criminal responsibility. *See Sims,* 466 N.E.2d at 25. Accordingly, the jury's rejection of Wooley's intervening cause theory is supported by the evidence.

### V. Self–Defense

■■■ Wooley contends that the State failed to disprove his self-defense claim beyond a reasonable doubt. As we understand this argument, it is a sufficiency of evidence claim, similar to that discussed in Part IV, but focused on self-defense. The standard of review is the same. The conviction will be affirmed if the probative evidence and reasonable inferences drawn could have allowed a reasonable jury to find Wooley guilty. *See Wooden v. State,* 657 N.E.2d 109, 111 (Ind.1995). Wooley does not argue that the State failed to rebut any of the elements of self-defense. Instead, Wooley's argument focuses on the lack of credibility of Hutson and Dalton and the "incredible dubiosity" of their testimony.

Although Wooley points to inconsistencies in Hutson's and Dalton's testimony, the jury was entitled to credit or discredit their testimony and that of Wooley. We will not reweigh the evidence or assess the credibility of witnesses, *Gant v. State,* 668 N.E.2d 254, 255 (Ind.1996), and thus cannot conclude that it was unreasonable for the jury to convict Wooley of murder.

### VI. Sentencing

Wooley argues that the trial court erred when it improperly found aggravating circumstances, failed to find mitigating circumstances and imposed the maximum

sentence. He asks this Court to revise his sentence.

■■■ In general, sentencing determinations are within the trial court's discretion and are governed by Indiana Code § 35–38–1–7.1 (1998). *Harris v. State,* 659 N.E.2d 522, 527 (Ind.1995). If a trial court relies on aggravating or mitigating circumstances to enhance or reduce the presumptive sentence, it must (1) identify all significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance is determined to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of the circumstances. *Id.* at 527–528. The court in this case identified three aggravating circumstances, stated why it found these circumstances to be aggravating, and stated that it found no mitigating circumstances. The court did not need to articulate its balancing of aggravating and mitigating circumstances because it found no mitigating circumstances.

#### A. *Aggravating Circumstances*

■■■ Wooley argues that the trial court improperly found that his one prior conviction for driving while intoxicated amounted to a history of criminal activity. We conclude that, in this case, a criminal history comprised of a single, nonviolent misdemeanor [3] is not a significant aggravator in the context of a sentence for murder.[4]

■■■ The trial court found as a second aggravating circumstance that "the defendant is in need of correctional or rehabili-

---

3. Wooley admitted at sentencing to the operating while intoxicated conviction and that he was required to pay "a fine." The record does not reveal how Wooley was charged in Michigan. However, for these purposes we note that in Indiana a first time offender who does not cause serious bodily injury or death to others may be charged with, at most, a Class A misdemeanor. *See* IND.CODE § 9–30–5–1 & 2 (1998).

4. Our decisional law requires that the trial courts identify all "significant" aggravating circumstances. *See e.g., Widener v. State,* 659

N.E.2d 529 (Ind.1995); *Hammons v. State,* 493 N.E.2d 1250 (Ind.1986). Significance varies based on the gravity, nature and number of prior offenses as they relate to the current offense. Therefore, a criminal history comprised of a prior conviction for operating a vehicle while intoxicated may rise to the level of a significant aggravator at a sentencing hearing for a subsequent alcohol-related offense. However, this criminal history does not command the same significance at a sentencing hearing for murder.

tative treatment that can best be provided by commitment of defendant to a penal facility." *See* IND.CODE § 35–38–1–7.1(b)(3). The court stated that "the defendant has not voluntarily attempted any rehabilitative treatment such as counseling while incarcerated." Wooley contends that this statement does not explain why he is "in need of corrective or rehabilitative treatment that can best be provided by incarceration in a penal facility in excess of the presumptive sentence." *See Hollins v. State*, 679 N.E.2d 1305, 1308 (Ind.1997) (trial court must provide specific or individualized statement); *see also Mayberry v. State*, 670 N.E.2d 1262, 1270–71 (Ind.1996). We agree that this statement is insufficient to support the imposition of an aggravated sentence. Every executed sentence entails incarceration. The question is whether extended incarceration is appropriate. There is no evidence to support the conclusion that Wooley is in need of treatment beyond the presumptive term. *Cf. Jones v. State*, 675 N.E.2d 1084, 1087 (Ind.1996) (trial court listed specific reasons for its finding including that courts had previously attempted "every program possible to keep the defendant from continuing his malevolent behavior, to try to get him off drugs and alcohol" and the defendant had not responded to probation programs or other methods of rehabilitative treatment). The trial court did not provide a specific or individualized statement of reason why Wooley was in need of time in a penal institution in excess of the presumptive sentence. Accordingly, this aggravating circumstance does not support an enhanced sentence.

■ Wooley argues that the trial court erred in relying on the circumstances of the crime as its third aggravating circumstance. The trial court stated:

This is a particularly brutal crime in that the defendant was uninvited by the victim and requested to leave, the defendant not only beat Claude Bobby Strow once but twice, kicked him, punched him and then stabbed him, the defendant was thirty years old, 6'5" and weighed 300 pounds at the time of the offense and the victim was fifty-eight years old, 5'7" and weighed 140 pounds, and there was evidence presented that the defendant stated "he won't die."

Wooley contends that he was invited by Dalton to Strow's house, and that Strow never asked Wooley to leave. He does not deny that he beat Strow twice, but he claims that the first "incident occurred when the decedent pulled a knife." He also contends that the relative size of the defendant and victim is not a proper aggravator "as it does not take into consideration the respective actions of the parties" and that the statement "he won't die" was reported to the court by Hutson whose "testimony was inherently dubious and not worthy of any belief."

A trial court is required by Indiana Code 35–38–1–7.1(a)(2) to consider the nature and circumstances of the crime. *See Mitchem v. State*, 685 N.E.2d 671, 680 (Ind.1997) (court may consider the manner in which crimes were committed as an aggravating circumstance); *see also Concepcion v. State*, 567 N.E.2d 784, 791 (Ind. 1991). The record does not reveal whether Wooley was asked to leave or who invited the group to Strow's house. However, these details are not the crux of the court's finding. Rather, the court focused on the "brutal" nature of the crime, which is supported by the record. Hutson testified that she observed Wooley repeatedly kick Strow, hit him over the head and finally stab Strow. Wooley testified that he punched Strow several times before stabbing him. The relative size of Wooley to Strow is also relevant and is supported by the record. The trial court properly found the nature and circumstances of the crime as an aggravating circumstance.

### B. *Mitigating Circumstances*

Wooley argues that the trial court erred in failing to identify or find mitigating circumstances. This claim requires Woo-

ley to establish that the offered mitigating evidence is both significant and clearly supported by the record. *Carter v. State,* 711 N.E.2d 835 (Ind.1999); *see also Crawley v. State,* 677 N.E.2d 520, 523 (Ind. 1997); *Hammons v. State,* 493 N.E.2d 1250, 1254 (Ind.1986) (sentencing statement must identify all "significant" mitigating circumstances). Here the trial court made no reference to any mitigating circumstances.

■ Wooley offered as mitigating circumstances his medical history of a seizure disorder, a letter from Wooley's former wife "informing the court of ... the type of person he is" and Wooley's apology to Strow's family. Only Wooley's medical condition is a potentially significant mitigating circumstance.

■ Wooley offered ample evidence of the fact that beginning in 1994 he has suffered seizures. However, he does not explain why his medical condition is a mitigating circumstance in this case. Wooley does not argue that he suffered a seizure while fighting with Strow, that his disorder results in his inability to control his behavior or that it is somehow related to the commission of the crime. As we read Wooley's argument, he seems to suggest that his seizure disorder makes him wary of violent situations:

\* \* \*

Q.... So when these things occur you're liable to pass out any time any place?

A. Yes.

Q. Would these be a concern for you if you were in a situation where there was some violence involved?

A. Yes it would.

Q. Because you'd never know when [a seizure is] going to happen?

A. That's right.

Q. And you would basically be at anybody's mercy if that occurred when you were in a fight with someone?

A. That's correct.

\* \* \*

Wooley makes no connection between his disorder and his crime. Without a showing by Wooley that his disorder affects his behavior or reduces his responsibility for his crime in some other way, we find no error in the trial court's failure to address Wooley's seizure disorder as a proffered mitigating circumstance. *See Wilkins v. State,* 500 N.E.2d 747, 749 (Ind.1986) (no error in trial court's failure to address mitigating circumstances that were highly disputable in nature, weight, or significance); *cf. Weeks v. State,* 697 N.E.2d 28, 30–31 (Ind.1998) (trial court erred in not considering long-diagnosed schizophrenic's "sufficient showing of his erratic behavior," as mitigating circumstance).

### C. The Presentence Report

According to statute, "a defendant convicted of a felony may not be sentenced before a written presentence report is prepared by a probation officer and considered by the sentencing court." IND.CODE § 35–38–1–8(a) (1998).[5] The legislature has further provided that the report should include information relating to the circumstances of the offense, the defendant's history of criminality, social and employment history, family situation, economic status, education, personal habits, and the impact of the crime upon the victims. *Id.* § 35–35–1–9(b). The report must include any matters the court directs to be included, any written statements submitted by the victim to the prosecuting attorney or probation officer, and the victim impact statement required by section 8.5. *Id.* § 35–35–1–9(c).

The presentence report in this case fulfilled the statutory mandate and provided

---

5. Trial courts may sentence a person convicted of a Class D felony without first considering a presentence report, but a probation officer must prepare a report if the defendant is committed to the department of corrections or a community corrections program. *See* IND.CODE § 35–38–1–8(c) (1998).

the trial court with useful information regarding the offense, Wooley's background, and the impact of the crime on the victims. This information is necessary in fashioning an appropriate sentence. However, this presentence report, as is true of many such reports submitted to trial courts, went beyond what is required by the statute.

Of particular concern is a five-page "Sentencing Guideline Worksheet" incorporated into the Presentence Report. The worksheet lists the statutory aggravating and mitigating circumstances as of 1994 and requires the probation officer to assign a point value of 0–5 to each. The final page of the worksheet tallies the points assigned to the aggravating circumstances and subtracts the points assigned to the mitigating circumstances to arrive at a total that produces a sentence recommendation. The point scale reads as follows: +20 points maximum sentence; +10 halfway to maximum sentence; 0 presumptive sentence;—10 halfway to minimum; and –20 minimum sentence. In this case, the probation officer assigned a weight of five to each of four factors the officer found aggravating, found no mitigating factors, and arrived at 20 points or, according to the scale, a maximum sentence.

 This worksheet used here is problematic for several reasons. First, it appears to be at least a few years outdated. It does not include the statutory aggravator for committing an offense in a "public safety improvement area" that was added in 1994. See IND.CODE § 35–38–1–7.1(b)(10) (Supp.1994).[6] Second, it does not take into consideration judicial disapproval of the use of the "depreciate the seriousness of the offense" aggravator to enhance a sentence. See, e.g., Ector v. State, 639 N.E.2d 1014 (Ind.1994). The worksheet allows five points to be added for this factor. However, we have observed several times in recent years that

this factor may only be used when considering imposition of a sentence below the presumptive. See, e.g., Jones v. State, 675 N.E.2d 1084, 1088 (Ind.1996); Ector, 639 N.E.2d at 1016. Therefore, if such a worksheet is to be used at all, under current law this factor must be listed at the bottom of the form and used only if the sum of the remaining factors is less than zero.

 This version of the worksheet allocates a maximum of five points for "other" mitigating circumstances. It omits a number of non-statutory mitigating circumstances, such as a defendant's youthful age, the existence of a mental illness, or a defendant's acceptance of responsibility through pleading guilty, all of which this Court has held can be mitigating under certain circumstances. See, e.g., Carter v. State, 711 N.E.2d 835, 842 (Ind.1999) (youthful age); Gambill v. State, 675 N.E.2d 668, 678 (Ind.1996) (mental illness); Widener v. State, 659 N.E.2d 529, 534 (Ind.1995) (pleading guilty/accepting responsibility). A probation officer who does not routinely review decisional law has no way of knowing what these factors are, when they should be applied, or if there is more than one whether they may offset multiple aggravating circumstances. Finally, although a single aggravating circumstance may justify the imposition of the maximum sentence in some cases, according to the worksheet a maximum +5 score on the worksheet for one aggravating circumstance would suggest a sentence only halfway to the maximum. For all these reasons, sentencing worksheets need to be used with caution and care. Not only may there be more recent legal developments, but judgment needs to be exercised in evaluating the existence of a factor and the weight to be given to it.

---

**6.** Three more statutory aggravators and one mitigator have been added since the time of

Wooley's crime. See id. § 35–38–1–7.1(b) & (c) (Supp.1999).

In addition to these general observations, the way the worksheet was used in this case raises an additional concern. The probation officer gave Wooley's criminal history—a single misdemeanor—a "5" on a scale of zero to five. Assigning the maximum number of points to Wooley in this category equates this single, relatively minor offense with multiple felonies.

▮ Probation personnel often provide a useful list of factors for the trial court to consider and certainly should supply relevant supporting information.[7] But trial courts must make their own independent determination of the aggravating and mitigating circumstances appropriate to each case and must use their judgment in assigning the relative weight to these factors. Sentencing worksheets that are properly completed and regularly updated to conform to statutory and decisional law developments may be a useful tool in making this determination, and this opinion should not be read to discourage their use. However, because this particular worksheet was outdated and imprecisely completed, its use was improper.

### D. *Remand is Required*

Although the trial court found one proper aggravating circumstance, it also relied on two that were improper.[8] Because we cannot conclude that the trial court would have imposed the maximum sentence if it considered the "nature and circumstances of the crime" as the sole aggravating circumstance, we remand for a new sentencing hearing.[9] *See, e.g., Angleton v. State,* 686 N.E.2d 803, 817 (Ind.1997).

7. The finding of aggravating and mitigating circumstances is a trial court function. When probation officers list these factors in a presentence report, they open themselves up to the possibility of being called to the stand at sentencing and asked about decisional law restricting the application of certain factors in some circumstances. For example, the probation officer in this case indicated that Wooley "was in need of correctional or rehabilitative treatment that can best be provided by commitment ... to a penal facility" and was

### Conclusion

We affirm Wooley's conviction for murder and remand for new sentencing consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ. concur.

questioned by defense counsel about Indiana Supreme Court case law that restricts when this aggravating circumstance may be used.

8. Moreover, the extent to which the trial court relied on the "Sentencing Guideline Worksheet" is unclear from the record.

9. Because we remand for a new sentencing hearing, Wooley's contention that his sentence is manifestly unreasonable is moot.