## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 25 2018, 10:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nicole A. Zelin
Pritzke & Davis, LLP
Greenfield, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Gary B. Henderson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 25, 2018

Court of Appeals Case No.
30A01-1710-CR-2395

Appeal from the Hancock Circuit Court

The Honorable Richard D. Culver, Judge

Trial Court Cause No.
30C01-1703-F5-648

**Bradford, Judge.**

# Case Summary

Gary Henderson was convicted of Class A misdemeanor domestic battery following a physical altercation involving his girlfriend. On appeal, Henderson contends that the evidence is insufficient to sustain his conviction. He argues both that the evidence is insufficient to (1) prove that he touched his girlfriend in a rude, insolent, or angry manner and (2) rebut his claim of self-defense. We affirm.

# Facts and Procedural History

Henderson and Alexandria Wright were involved in a romantic relationship and, in August of 2016, began living together. At some point, Wright became pregnant with Henderson's child. In anticipation for the baby's arrival, they prepared a room for the baby. However, by the end of March of 2017, Henderson and Wright were experiencing relationship troubles.

On Friday March 24, 2017, Henderson and Wright argued before he and his children went to Kentucky to visit family. They continued to argue via telephone and text message throughout the course of the weekend. At some point, Wright told Henderson that "enough was enough" and that she was "going to pack [her] things while he was gone and … leave him." Tr. Vol. II, p. 25. Over the course of Saturday and Sunday, Wright packed "what [she] needed for [her unborn] baby and for [herself]" and took the items to her brother's home. Tr. Vol. II, p. 26. Although Henderson and Wright continued

to argue after he returned home on Sunday evening, they agreed to work on their relationship and discussed going to counseling.

[4] The next morning, Henderson and Wright continued to discuss their relationship but began arguing again after Henderson attempted to remove some items from Wright's vehicle and bring the items back into the home. At this point, Wright observed that Henderson had replaced the doorknob to the room they had prepared for the baby with a deadbolt and had kept the key for himself.

[5] In an attempt to keep Henderson from locking the door, Wright placed herself in the open doorway. Eventually, the argument became physical with Henderson restraining Wright, Wright biting Henderson on the chest, and Henderson pulling Wright away by the ponytail. After Wright broke free from Henderson's grasp, Henderson shut the door and Wright left the residence.

[6] On March 28, 2017, the State charged Henderson with Level 5 felony battery resulting in bodily injury to a pregnant woman and Class A misdemeanor domestic battery. Following a two-day jury trial, Henderson was found not guilty of the Level 5 felony charge but guilty of Class A misdemeanor domestic battery. The trial court subsequently sentenced him to a term of 365 days with credit for time served and the remaining time suspended to probation.

# Discussion and Decision

Henderson contends that the evidence is insufficient to sustain his conviction for domestic battery. In raising this contention, Henderson argues that the evidence is insufficient to prove that he touched Wright in an angry, insolent, or rude manner. Alternatively, Henderson argues that the evidence is insufficient to rebut his self-defense claim.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original).

## A. Sufficiency of Evidence to Sustain Conviction

In challenging the sufficiency of the evidence to sustain his conviction for Class A misdemeanor domestic battery, Henderson acknowledges the general

proposition that guilt may be proven by the uncorroborated testimony of a single witness. *See generally, Ferrell v. State*, 565 N.E.2d 1070, 1072–73 (Ind. 1991) (providing that "the uncorroborated testimony of one witness is sufficient to convict, even if the witness in question is the victim"). Henderson, however, asserts that in this case, "the verdict cannot stand" because Wright's testimony "was incredibly dubious and inherently improbable." Appellant's Br. p. 8 (quotation marks omitted).

> Under the "incredible dubiosity rule," this court may impinge upon the jury's responsibility to judge the credibility of witnesses when confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony. *Manuel v. State*, 971 N.E.2d 1262, 1271 (Ind. Ct. App. 2012). If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. *Id*. Application of this rule is rare, though, and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it. *Id*.

*Livers v. State*, 994 N.E.2d 1251, 1256 (Ind. Ct. App. 2013). Review of the record reveals that contrary to Henderson's assertion, Wright's testimony was neither incredibly dubious nor inherently improbable.

[10] In order to prove that Henderson committed Class A misdemeanor domestic battery, the State was required to prove that he "touche[d] a family or household member in a rude, insolent, or angry manner[.]" Ind. Code § 35-42-2-1.3(a)(1). Henderson's testimony corroborated Wright's testimony regarding a rude, angry, or insolent touching of Wright by Henderson. Wright testified

that on the day in question, she and Henderson were engaged in a verbal argument and that the argument eventually became physical. She testified that during the argument, Henderson both restrained her arms and pulled her hair. Although Henderson later testified that he did not restrain Wright's arms, he testified that he grabbed Wright by the hair and pulled her way. Given that both Henderson and Wright indicated that they were arguing when Henderson grabbed and pulled Wright by the hair, the jury could reasonably infer that Henderson did so in a rude, insolent, or angry manner. *See Drane*, 867 N.E.2d at 147.

[11] Henderson's assertion that Wright's testimony was incredibly dubious appears to be based on his claim that it would have been impossible for him to lock the deadbolt to the door with one hand. However, review of Wright's testimony indicates that she merely testified that he shut the door and that she did not remember whether he locked the door. In addition, to the extent that Henderson asserts that it was impossible to shut the door because the door handle had been removed, the State presented evidence that the new handle and deadbolt had been installed prior to the altercation. Henderson's claim effectively amounts to an invitation to reweigh the evidence and reassess witness credibility, which we will not do. *See Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

## B. Henderson's Self-Defense Claim

[12] Alternatively, Henderson asserts that the State failed to rebut his claim of self-defense.

A valid claim of defense of oneself or another person is legal justification for an otherwise criminal act. Ind. Code § 35–41–3–2(a); *Wallace v. State*, 725 N.E.2d 837, 840 (Ind. 2000). In order to prevail on such a claim, the defendant must show that he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *McEwen v. State*, 695 N.E.2d 79, 90 (Ind. 1998). When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. *Id.* If a defendant is convicted despite his claim of self-defense, this Court will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. *Taylor v. State*, 710 N.E.2d 921, 924 (Ind. 1999). In any event, a mutual combatant, whether or not the initial aggressor, must declare an armistice before he or she may claim self-defense. *Wooley v. State*, 716 N.E.2d 919, 926 (Ind. 1999); *see* I.C. § 35–41–3–2(e)(3) (2002) ("[A] person is not justified in using force if: ... the person has entered into combat with another person or is the initial aggressor, unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action.").

*Wilson v. State*, 770 N.E.2d 799, 800–01 (Ind. 2002).

[13]   By his own admission, Henderson was a mutual combatant in the altercation. He and Wright mutually participated in a verbal agreement which escalated, at least in part, because of his actions. Further, at no point did he withdraw from the altercation or declare an armistice. As such, given the evidence presented during trial, Henderson's self-defense claim could not succeed. *Id.* (citing *Wooley*, 716 N.E.2d at 926; I.C. § 35–41–3–2(e)(3)). The State, therefore, met its burden of rebutting Henderson's claim of self-defense.

The judgment of the trial court is affirmed.

Baker, J., and Kirsch, J., concur.