


FILED

Jun 25 2024, 8:52 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Corey Mirabal,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

June 25, 2024

Court of Appeals Case No.
23A-CR-1451

Appeal from the Marion Superior Court

The Honorable James B. Osborn, Judge

Trial Court Cause No.
49D21-2108-MR-24104

---

**Opinion by Judge Pyle**
Judges Bailey and Crone concur.

**Pyle, Judge.**

## Statement of the Case

Corey Mirabal ("Mirabal") appeals, following a jury trial, his conviction for murder.[1] He argues that: (1) the trial court erred when it denied his Criminal Rule 4(C) motion for discharge; and (2) there is insufficient evidence to support his conviction.

We affirm.

## Issues

1. Whether the trial court erred when it denied Mirabal's Criminal Rule 4(C) motion for discharge.

2. Whether there is sufficient evidence to support Mirabal's murder conviction.

## Facts

The facts most favorable to the verdict reveal that in July 2021, twenty-three-year-old Mirabal and twenty-four-year-old Kane Baca ("Baca") shared an apartment on the west side of Indianapolis. Baca's girlfriend, Sarai Harrod ("Harrod"), who was the mother of Baca's three young children ("the children"), lived in the same apartment complex, and Baca often spent the night at her apartment.

---

[1] IND. CODE § 35-42-1-1.

[4]     On July 30, 2021, Baca's mother arrived at Harrod's apartment at approximately 6:00 p.m. to watch the children while Baca and Harrod went out for the evening. Harrod dropped Baca off to play video games at the apartment that he shared with Mirabal, and she then went to a friend's house. Harrod picked Baca up at his apartment at about midnight, and she and Baca returned to her apartment.

[5]     At approximately 4:40 a.m. on July 31, 2021, Baca and Harrod were awakened by the sound of pebbles hitting the bedroom window. When they looked outside, they saw Mirabal, who was wearing light-colored basketball shorts. Mirabal gestured at Baca to go downstairs to the front door. Harrod followed Baca down the stairs, and when Baca opened the front door, Mirabal, who seemed upset, asked Baca, "[w]here's my stuff?" (Tr. Vol. 4 at 42). Baca told Harrod that he was going to go with Mirabal. Baca grabbed his cell phone, walked out the front door, and closed it. Twenty to thirty seconds later, Harrod heard nine to twelve gunshots. She ran out the front door and found Baca, who had been shot multiple times, lying in the street.

[6]     Harrod's neighbor, a medical aid who was in nursing school, heard the gunshots, ran outside, and applied pressure to Baca's gunshot wounds. Shortly thereafter, Indianapolis Metropolitan Police Department ("IMPD") Officer Grady Copeland, Jr., ("Officer Copeland") arrived at the scene. Officer Copeland, who was wearing a body camera, approached Baca and noticed that he was in critical condition. Officer Copeland, who also noticed multiple shell casings on the ground around Baca, asked Baca if he knew who had shot him.

Baca responded, "Corey Mirabal." (State's Ex. 132A at 00:22). Officer Copeland asked Baca, "Corey who," and Baca responded "Mirabal." (State's Ex. 132A at 00:26). A few seconds later, Officer Copeland again asked Baca who had shot him, and Baca again responded, "Corey Mirabal." (State's Ex. 132A at 00:32). Officer Copeland also asked Baca if anyone else had been with Corey, and Baca responded, "yeah, it was a car full." (State's Ex. 132A at 00:38).

[7] Emergency medical responders arrived at the scene and transported Baca to the hospital, where he died later that morning. Following an autopsy, a forensic pathologist determined that Baca's cause of death was multiple gunshot wounds and the manner of death was homicide. A forensic scientist examined the shell casings at the scene and determined that a minimum of three firearms and a maximum of eight firearms had been used in the shooting.

[8] Later that morning, after Baca had passed away, IMPD homicide detective Lottie Patrick ("Detective Patrick") became the lead detective on the case. Detective Patrick obtained video surveillance from the apartment complex. The video showed an individual, who matched Mirabal's physical description and who was wearing light-colored basketball shorts, leave his apartment at 4:34 a.m. and get into the back seat of a dark-colored sedan. The video further showed the sedan being driven through the apartment complex and arriving at Harrod's apartment at 4:38 a.m. The individual matching Mirabal's description got out of the sedan and approached Harrod's apartment. Five minutes later, the individual matching Mirabal's description returned to the sedan and got

into the back seat. Seconds later, Baca exited his apartment and approached the sedan. Five seconds later, the sedan sped away from the scene, and Baca was seen lying on the ground.

[9] On August 4, 2021, Harrod, who had known Mirabal since high school, identified him in a photo array. The following day, the State charged Mirabal with murder and Level 5 felony carrying a handgun without a license. Mirabal's trial was eventually scheduled for March 6, 2023.

[10] At 7:30 a.m. on March 6, 2023, the State filed an emergency motion to continue Mirabal's trial. The State explained in its motion that, in the early morning hours, it had been informed that Detective Patrick had been taken to the emergency room and had been admitted to the hospital with signs of a possible medical emergency. The State further explained that it could not properly proceed without Detective Patrick's testimony and asked, at that time, for a short continuance of two weeks.

[11] That morning, at a hearing on its motion, the State further explained that it had received an email from Detective Patrick's sergeant at 2:00 that morning. The sergeant had explained that Detective Patrick had been admitted to the hospital with symptoms of a medical emergency. The State told the trial court that as the lead detective on the case, Detective Patrick was an essential witness. The State reiterated that, at that time, it was asking for a short continuance of only two weeks, which would be March 20, 2023.

[12]    Mirabal objected to the continuance and "request[ed] a speedy trial deadline[.]"[2] (Tr. Vol. 2 at 61). The trial court granted the State's motion for a continuance and rescheduled the trial for March 20, 2023. In addition, the trial court "grant[ed] [Mirabal's] motion for a speedy trial request[]" and determined that the speedy trial deadline was May 15, 2023. (Tr. Vol. 2 at 61). Thereafter, the State explained that after it had learned more about Detective Patrick's medical condition and whether she would be available for trial on March 20, 2023, it would let Mirabal and the trial court know as soon as possible.

[13]    On March 15, 2023, the State filed another motion to continue Mirabal's trial. According to the State, it had learned that Detective Patrick had been scheduled, at the earliest, to return from her medical leave on March 20, 2023. However, given the nature of Detective Patrick's medical emergency and the fact that she would likely be subjected to a lengthy cross-examination regarding her investigation, the State explained that it was "seeking a continuance so as to not jeopardize her recovery by subjecting her to the stress of a trial immediately upon her return." (App. Vol. 2 at 145). The State requested that the trial be rescheduled for May 15, 2023 because "[n]o other date provided by the Defense work[ed] for the State and/or the majority of its essential witnesses." (App.

---

[2] "Criminal Rule 4(B) allows an incarcerated defendant to 'move for an early trial' and then be 'discharged if not brought to trial within seventy (70) days.'" *Watson v. State*, 155 N.E.3d 608, 615 (Ind. 2020).

Vol. 2 at 145-46). The trial court granted the State's motion over Mirabal's objection and scheduled the trial for May 15, 2023.

[14] Two days before trial, on May 13, 2023, Mirabal filed a motion for discharge pursuant to Criminal Rule 4(C), which, at that time, provided, in relevant part, that "[n]o person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against him is filed[.]" According to Mirabal, he had determined that "[t]he one-year time limit in this case was March 9, 2023." (App. Vol. 2 at 155).

[15] The following day, the State filed a response to Mirabal's motion. In its response, the State argued that "[t]he State's continuance of the March 6, 2023, trial date was a valid extension of the deadline under Indiana Rule of Criminal Procedure 4(D) due to the unavailability of the State's key witness, Detective Lottie Patrick, after she suffered a medical emergency the night before the March 6 date." (App. Vol. 2 at 162).

[16] On May 15, 2023, the trial court held a hearing on Mirabal's motion for discharge. At the hearing, Mirabal told the trial court that, in preparing for trial, it had come to his attention that the State was beyond its one-year limit to bring him to trial. Mirabal acknowledged that the State's March 6, 2023, motion for a continuance was based on an emergency and argued that "if the State had come before this Court on March 6th and asked for 90 days under 4(D) then the Court would still be within that timeframe." (Tr. Vol. 3 at 25).

However, according to Mirabal, "the State's March 15th motion [for a continuance] was a concession that the emergency had ended." (Tr. Vol. 3 at 25). Mirabal argued that "the State [had] confirmed [in its March 15 motion for a continuance] that Detective Patrick was in fact available for trial as she was returning to work on [March] 20th." (Tr. Vol. 3 at 25). Mirabal further argued that "at that point they lost the safety valve of that emergency under [Criminal Rule] 4(D)[.]" (Tr. Vol. 3 at 26).

[17] The State responded that it had not confirmed in its March 15, 2023, motion that Detective Patrick would be returning from her medical leave on March 20, 2023. Rather, according to the State, it had simply stated that the earliest that Detective Patrick would be returning from her medical leave was on March 20, 2023. The State further explained that it would not have been able to go forward with Mirabal's trial on March 20, 2023, because Detective Patrick had not returned from her medical leave until May 1, 2023.

[18] After reviewing Mirabal's motion for discharge and relevant case law, the trial court returned to the bench and stated as follows:

> First, factually, there's no argument that we're past the 365 day date.
>
> The reason we got past the 365-day date was that when we were set for trial originally, that was on March 6th, the detective in the case had medical health issues that required a continuance by the State, so there was an emergency situation. The Court set the date within the 365 day date, as well as the 70 day date for the speedy, but the speedy really isn't an issue in this, or the 70 day speedy isn't an issue in this, we're just talking about the 365 days.

And it was set under the premise that there was a medical emergency that we weren't entirely clear about the extent of the emergency, at least on the first continuance. In the State's motion, a second motion for continuance on March 15th, that did push it past the 365 days when the Court granted the motion, the State said that they learned that the detective would return from medical leave at the earliest on March 20th, if there was recovery without setbacks. So it was an ambiguous statement as to exactly whether or not the detective was going to be available, but it was clear the detective, that they didn't think the detective could be in the best shape to testify at that point in time.

. . . I think it would have been better if the State had been able to say specifically what the situation was, what the prognosis was, and been able to provide the Court with more information than it did, saying that she could return at the earliest was ambiguous at best.

\*　　\*　　\*　　\*　　\*

. . . But I think given the circumstances, given what we've been told about the detective's medical condition, I don't think it was unreasonable to request that second date, and I don't think it was unreasonable for the Court to grant the second continuance as a continuing emergency.

. . . So I find that there was a continuing emergency . . . .

. . . [W]e are still within the rule where I am not required to discharge the Defendant in this matter. So we will go forward with trial today.

(Tr. Vol. 3 at 32-35).

[19]    At the three-day trial, the jury heard the facts surrounding Baca's murder as set forth above. In addition, the jury watched Officer Copeland's body camera

video wherein Baca identified Mirabal as the shooter. The jury also watched the apartment complex's surveillance video.

[20] Before closing arguments, the trial court granted Mirabal's motion to dismiss the Level 5 felony carrying a handgun without a license count. The State did not object to the dismissal.

[21] Thereafter, the jury convicted Mirabal of murder. Following a sentencing hearing, the trial court sentenced Mirabal to fifty (50) years, with forty-eight (48) years executed in the Department of Correction and two (2) years on probation.

[22] Mirabal now appeals his conviction.

## Decision

[23] Mirabal argues that: (1) the trial court erred when it denied his Criminal Rule 4(C) motion for discharge; and (2) there is insufficient evidence to support his murder conviction. We address each of his contentions in turn.

### 1. Motion for Discharge

[24] Mirabal first argues that the trial court erred when it denied his Criminal Rule 4(C) motion for discharge. The State responds that the trial court did not err in denying Mirabal's motion for discharge because the scheduling of his trial date was proper under Criminal Rule 4(D). We agree with the State.

[25] We generally review a trial court's ruling on a motion for discharge for an abuse of discretion. *Battering v. State*, 150 N.E.3d 597, 600 (Ind. 2020). However, where, as here, the relevant facts are undisputed and the issue is a question of law, we evaluate a Criminal Rule 4 motion for discharge de novo. *Id.*

[26] "The Sixth Amendment to the United States Constitution and Article 1, Section 12 of the Indiana Constitution guarantee an accused individual's right to a speedy trial." *Chambers v. State*, 848 N.E.2d 298, 301 (Ind. Ct. App. 2006), *trans. denied*. "This fundamental principle of constitutional law has long been zealously guarded by our courts." *Id.* "To this end, the provisions of Criminal Rule 4 implement a defendant's speedy trial right." *Id.* Specifically, at the time of the proceedings below, Criminal Rule 4(C) provided, in relevant part, as follows:

> No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar[.] Any defendant so held shall, on motion, be discharged.

Ind. Crim. Rule 4(C) (2023).[3]

---

[3] Criminal Rule 4(C) was amended effective January 1, 2024.

[27] Here, the parties agree that the State did not bring Mirabal to trial within the one-year time period set forth in Criminal Rule 4(C). They also appear to agree that the one-year time period expired on March 9, 2023.

[28] However, Criminal Rule 4(D) provides for a ninety-day extension under certain circumstances. *Small v. State*, 112 N.E.3d 738, 741 (Ind. Ct. App. 2018). Specifically, at the time of the proceedings below, Criminal Rule 4(D) provided as follows:

> If when application is made for discharge of a defendant under this rule, the court be satisfied that there is evidence for the state, which cannot then be had, that reasonable effort has been made to procure the same and there is just ground to believe that such evidence can be had within ninety (90) days, the cause may be continued, and the prisoner remanded or admitted to bail; and if he be not brought to trial by the state within such additional ninety (90) days, he shall then be discharged.

Ind. Crim. Rule 4(D) (2023).[4]

[29] Thus, Criminal Rule 4(D) provides that a trial court may grant the State a continuance when it is satisfied "(1) that there is evidence for the State that cannot then be had; (2) that reasonable effort has been made by the State to procure the evidence; and (3) that there is just ground to believe that such evidence can be had within ninety days." *Small*, 112 N.E.3d at 742 (internal

---

[4] Criminal Rule 4(D) was also amended effective January 1, 2024.

quotation marks and citation omitted).  Any exigent circumstances may warrant a reasonable delay beyond the limitations of Criminal Rule 4.  *Smith v. State*, 982 N.E.2d 393, 401 (Ind. Ct. App. 2013), *trans. denied*.  The reasonableness of such a delay should be judged in the context of the particular case.  *Id.*

[30]     Here, Mirabal acknowledges that, pursuant to Criminal Rule 4(D) and based upon Detective Patrick's medical emergency, it was reasonable for the trial court to continue the trial from March 6, 2023 until March 20, 2023.  *See Woodson v. State*, 466 N.E.2d 432, 434 (Ind. 1984) (explaining that the trial court did not err in denying appellant's motion for discharge where, pursuant to Criminal Rule 4(D), the hospitalization of a witness was good cause for extending the time period requirements under Criminal Rule 4).

[31]     However, according to Mirabal, the emergency ended on March 20, 2023, because the State's March 15, 2023, motion for a continuance did not provide that Detective Patrick was unavailable on March 20, 2023.  Rather, according to Mirabal, the State represented in its March 15 motion that "whatever emergency it had with [Detective Patrick] ceased by March 20, 2023.  It was represented to the trial court it would be available for trial on March 20, 2023." (Mirabal's Br. 17).

[32]     We disagree with Mirabal's characterization of the State's motion.  Specifically, our review of the State's March 15, 2023, motion to continue reveals that the State had learned that Detective Patrick had been scheduled, *at the earliest*, to

return from her medical leave on March 20, 2023. The State's motion did not state that Detective Patrick would be available for trial on March 20, 2023. The State's motion further provided that even if Detective Patrick returned from her medical leave on March 20, 2023, the State did not want to jeopardize her recovery by subjecting her to the stress of a trial where, as the lead detective, she would likely be subjected to a lengthy cross-examination regarding her investigation.

[33] We agree with the trial court that it would have been better if the State had been able to provide the trial court with more information about the specifics of Detective Patrick's return to work, which did not occur until May 1, 2023. However, we also agree with the trial court that given the circumstances of Detective Patrick's medical condition, the State's March 15, 2023, motion for a continuance was based on a continuing medical emergency and was within the parameters of Criminal Rule 4(D). Specifically, Mirabal was brought to trial within ninety days of the State's March 6, 2023, emergency motion to continue the trial. Accordingly, the trial court did not err in denying Mirabal's motion for discharge. *See Wooley v. State*, 716 N.E.2d 919, 925 (Ind. 1999) (explaining that Criminal Rule 4(D) "does not, as Wooley contends, preclude additional extensions of a setting within the ninety day period . . . as long as the parameters established by the Rule are met[,]" and the defendant is brought to trial within ninety days).

## 2. Sufficiency of the Evidence

[34] Mirabal also argues that there is insufficient evidence to support his murder conviction. Our standard of review for sufficiency of the evidence claims is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not reweigh the evidence or judge witness credibility. *Id.* We will affirm the conviction unless no reasonable fact finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* The evidence is sufficient if an inference may be reasonably drawn from it to support the verdict. *Id.* at 147.

[35] To convict Mirabal of murder, the State was required to prove beyond a reasonable doubt that Mirabal knowingly or intentionally killed Baca. *See* I.C. § 35-42-1-1. Our review of the evidence reveals that at approximately 4:40 a.m., Mirabal threw pebbles at Harrod's bedroom window. When Baca and Harrod woke up and looked out the window, they saw Mirabal, who was wearing light-colored basketball shorts. Mirabal gestured at Baca to go downstairs to the front door. Harrod followed Baca downstairs to the front door. When Baca opened the door, Mirabal, who seemed upset, asked Baca "[w]here's my stuff?" (Tr. Vol. 4 at 42). Baca told Harrod that he was going outside, and after grabbing his cell phone, Baca walked out the front door and closed it. Twenty to thirty seconds later, Harrod heard nine to twelve gunshots. She opened the front door and saw Baca, who had been shot multiple times, lying in the street.

[36] When Officer Copeland, who was wearing a body camera, arrived at the scene, he twice asked Baca who had shot him. Baca twice responded that Mirabal had shot him. The jury watched Officer Copeland's body camera video.

[37] In addition, the apartment complex's surveillance video showed an individual matching Mirabal's physical description, who was wearing light-colored basketball shorts, leave his apartment at 4:34 a.m. and get into the back seat of a dark-colored sedan. The video further showed the sedan being driven through the apartment complex and arriving at Harrod's apartment at 4:38 a.m. The individual matching Mirabal's description got out of the car and approached Harrod's apartment. Five minutes later, the individual matching Mirabal's description returned to the car and got into the back seat. Seconds later, Baca exited his apartment and approached the car. Five seconds later, the car sped away from the scene, and Baca was seen lying on the ground. We further note that the jury watched this surveillance video. The totality of this evidence is sufficient to support the jury's finding that, beyond a reasonable doubt, Mirabal committed the offense of murder. Mirabal's argument regarding the quality of the police investigation is simply a request to reweigh the evidence, which we will not do. *See Drane*, 867 N.E.2d at 146.

[38] Affirmed.


Bailey, J., and Crone, J., concur.

ATTORNEY FOR APPELLANT

Frederick Vaiana
Voyles Vaiana Lukemeyer Baldwin & Webb
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney General
Indianapolis, Indiana