**Curtis BURNSIDE, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

**No. 71A04–0605–PC–264.**

Court of Appeals of Indiana.

Dec. 14, 2006.

Susan K. Carpenter, Public Defender of Indiana, Brian Eisenman, Deputy Public Defender, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin R. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Curtis Burnside appeals the post-conviction court's denial of his petition for post-conviction relief. Burnside raises two issues, which we consolidate and restate as whether he was denied the effective assistance of trial and appellate counsel. We reverse and remand.

The relevant facts follow. In the early morning of July 17, 2000, Burnside's sister, Quiyana Burnside ("Quiyana"), and Ernest Williams were riding around in Quiyana's car. *Burnside v. State,* No. 71A04–0104–CR–152, slip op. at 2, 762 N.E.2d 792 (Ind.Ct.App. Jan.9, 2002), *trans. denied.* During this car ride, Williams asked Quiyana for some money. *Id.* When Quiyana refused to give Williams any money, Williams began to hit Quiyana and then stole drugs and money that were hidden in her bra. *Id.*

Later that same day, Quiyana was driving around with two acquaintances and her brother, Burnside. *Id.* Burnside was informed that Williams had hit Quiyana and stolen money and drugs from her. *Id.* Quiyana and her three passengers stopped at a mini-mart that was located about a block from Williams's house. *Id.* Burnside informed Quiyana that he was going to walk over and talk to Williams. *Id.* After arriving at Williams's house, Burnside and

Williams argued outside of the house. *Id.* at 2–3. Burnside then removed a handgun from his back left pants pocket and shot Williams four times, resulting in his death. *Id.* at 3.

The State charged Burnside with murder.[1] At the jury trial, Burnside's defense was that he killed Williams in self defense. Alternatively, Burnside argued that the homicide was done recklessly, not knowingly or intentionally. During the State's cross examination of Burnside, the State asked, over Burnside's objection, if he had a license to carry his handgun. Burnside admitted that he did not have a license, and the trial court instructed the jury that "in the State of Indiana for a person to carry a handgun, a person is required by law to obtain a permit." Transcript at 504. Burnside requested jury instructions on both self defense and reckless homicide, and the trial court instructed the jury regarding both theories. The State objected to the instruction because it intermingled the self defense and reckless homicide theories, but the objection was denied. Burnside did not object to the instruction. The jury found Burnside guilty of murder, and the trial court sentenced him to the Indiana Department of Correction for a term of sixty-five years imprisonment, with ten years suspended and ten years of probation upon his release. *Burnside*, No. 71A04–0104–CR–152, slip op. at 3, 762 N.E.2d 792.

On direct appeal of his conviction, Burnside argued that the trial court erred when it denied his motion for a mistrial and that his trial counsel was ineffective because she stipulated to the admission of his videotaped statement and referred to the statement during her opening arguments.

*Id.* at 3, 8. We affirmed Burnside's conviction. *Id.* at 9.

Burnside filed a petition for post-conviction relief alleging that he received ineffective assistance of trial and appellate counsel and that the trial court committed error regarding the admission of evidence. After a hearing, the post-conviction court denied Burnside's petition as follows:

Petitioner argues that the Court's final instructions to the jury were erroneous as a matter of law with respect to self-defense in three ways:

1. Petitioner's first claim is that the instruction impermissibly merges self-defense and reckless homicide. In fact, the instruction first points out that "A person is justified in using reasonable force against another person to protect himself from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reasonably believes that such force is necessary to prevent serious bodily injury to himself or the commission of a forcible felony." Later the instruction says, "If you conclude from all the evidence that deadly force was used as self-defense, you should next determine from all the evidence whether the State proved beyond a reasonable doubt that this use of deadly force was not justified as self-defense as discussed elsewhere in these instructions." Read as a whole, the instruction adequately informs the jury of when deadly force is justified, and tells the jury that the State has the burden to prove beyond a reasonable doubt that this use of deadly force was not justified as self-defense.

2. Petitioner's second claim—that "the instruction erroneously shifts the burden

---

1. Ind.Code § 35–42–1–1 (1998) (subsequently amended by Pub.L. No. 17–2001, § 15 (eff. July 1, 2001); Pub.L. No. 151–2006, § 16 (eff. July 1, 2006); Pub.L. No. 173–2006, § 51 (eff. July 1, 2006)).

of proof to the defendant"—is simply not supported by the language of the instruction. Nowhere in the entire instruction does it say that the defendant has to prove, or indeed assert, anything. The language carefully speaks of the *jury* determining things from the evidence ("if you find"), and what the State has to *prove,* and whether the State *failed* to *prove* something. It never says that the *Defendant* has to show anything. There is no shifting of the burden of proof here.

3. Petitioner claims that the instruction did not give the complete statement of law as to the requirement for the use of deadly force. The Court's instruction reads:

For a claim of the use of deadly force in self-defense to prevail, the evidence must establish that: 1. The defendant was in a place in which he had a right to be; 2. He did not provoke, instigate, or participate willingly in violence, and 3. He had reasonable fear of death or great bodily harm. Petitioner claims that the Court's instruction is "an incomplete statement of the law," and then quotes I.C. 35–41–3–2(e)(2) which provides that a defendant is not justified in using *any* force if that defendant "provokes *unlawful action* by another person *with intent to cause bodily injury to the other person"*. In point of fact, this was not Defendant's theory of the case, nor his theory of self-defense. He never claimed that the *victim* ever engaged in *unlawful action* during the confrontation between the Defendant and the victim. Therefore, to have employed the statutory language would not have been *a-propos* to the evidence nor to Defendant's theory of self defense. Under the Court's instruction, if the evidence showed that the Defendant did not provoke, instigate, or participate in any *violence* by another person, the condition

precedent for invoking self-defense is fully met.

Moreover, it is entirely conceivable that a jury could find that a defendant provoked *some* action by the victim *without* the Defendant having a then-present intent to cause bodily injury to the other person. If the "with intent" phrase were in the instruction, the jury could conclude that the defense of self-defense was not available to him, if he did not *initially* have intent to cause bodily injury to the victim—which Petitioner's added intent phrase would require.

Petitioner further claims that the instruction on reckless homicide is fundamentally deficient. The instruction on recklessness stated, "The term 'reckless' means that a person engages in conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct. A person who recklessly kills another human being commits reckless homicide, a Class C felony." This Court believes that this is not fundamentally deficient.

Petitioner's final claim of reversible error is grounded in the introduction of evidence that he did not have a license for the gun he brought to the confrontation, which is a violation of law. Granting that testimony of another uncharged act should not ordinarily be admitted, it is to be noted here that this is not evidence of some other, extrinsic act of which there was otherwise no evidence. It relates to the possession of the handgun that Defendant carried, drew, and used to shoot the victim. Indeed, Defendant did not deny the shooting. He claimed self-defense. Defendant was unsuccessful in urging incompetent trial counsel in his direct appeal. As the

court of Appeals pointed out, "To succeed, the petitioner must demonstrate both deficient performance and resulting prejudice ..." Prejudice exists when "there is a reasonable probability that the result of the proceeding would have been different but for defense counsel's inadequate representation." As the Court had pointed out in its summary of the factual background, when Defendant learned that the victim had just hit Defendant's sister and had taken money and drugs from her bra, he went over to the victim's home. He had a gun in his back pocket, and drew it after he and the victim began arguing outside the victim's home. He admitted the shooting.

There is no showing that the lack of a license to possess the gun tipped the balance against the Defendant, nor is there a showing that there is a reasonable probability that the verdict would have been different had this lack of a license not been mentioned. In *Bocko v. State*, 769 N.E.2d 658 (Ind.App.2002), the trial court had admitted testimony that, as he prepared to go to the police, that defendant threw away some heroin in his possession—which was not included as a charge. The Court held that the admission of the uncharged crime was not error since it completed the story of the Defendant's charged crime (which was not the heroin), and there was no substantial likelihood that the admitted evidence contributed to the jury's verdict. In the present case, the jury knew that the Defendant had just learned about the victim taking money and drugs from his sister's bra, they knew the Defendant had a gun with him, and they knew that he used that gun to kill the victim. There is no substantial likelihood that the admitted evidence of his having no license for the gun contributed to the jury's verdict.

## ORDER

**Wherefore, this Court finds that the evidence did not support the Petitioner's claim that reversible error was committed in the above matters, nor that trial counsel nor appellate counsel were incompetent in their representation of Petitioner. This Court denies the Petition for Post–Conviction Relief. ENTERED ON THE DATE FILE–MARKED HEREON.**

Appellant's Appendix at 159–164.

■ Before discussing Burnside's allegations of error, we note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind.2004); Ind. Post–Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post–Conviction Rule 1(6). *Id.* "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

The issue is whether Burnside received ineffective assistance of trial and appellate counsel. We apply the same standard of review to claims of ineffective assistance of appellate counsel as we apply to claims of ineffective assistance of trial counsel. *Williams v. State*, 724 N.E.2d 1070, 1078 (Ind.2000), *reh'g denied*, cert. *denied*, 531 U.S. 1128, 121 S.Ct. 886, 148 L.Ed.2d 793 (2001). To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Ben–Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind.2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), *reh'g denied*), *reh'g denied*, cert. *denied*, 534 U.S. 830, 122 S.Ct. 74, 151 L.Ed.2d 39 (2001). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *French v. State*, 778 N.E.2d 816, 824 (Ind.2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* Failure to satisfy either prong will cause the claim to fail. *Id.* Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

## A. *Trial Counsel.*

 Burnside argues that his trial counsel was ineffective for failing to object to the jury instruction regarding self defense and reckless homicide. The State argues that Burnside is barred from asserting this claim by the doctrine of res judicata because he raised an ineffective

assistance of trial counsel argument in his direct appeal. We agree. "It is well-established that if a defendant claims on direct appeal that his trial counsel was ineffective, he may not raise further issues of trial counsel error during post-conviction review." *Allen v. State*, 749 N.E.2d 1158, 1166 (Ind.2001), *reh'g denied*, cert. *denied*, 535 U.S. 1061, 122 S.Ct. 1925, 152 L.Ed.2d 832 (2002). Burnside argued on direct appeal that his trial counsel was ineffective. Thus, he cannot raise that issue in seeking post-conviction relief. *See, e.g., McCary v. State*, 761 N.E.2d 389, 392 (Ind.2002) (holding that the defendant's post-conviction relief claim of ineffective assistance of trial counsel was res judicata where he made the same argument on direct appeal), *reh'g denied*.

## B. *Appellate Counsel.*

 Burnside argues that his appellate counsel was ineffective by failing to argue on appeal that: (1) the jury instruction on self defense and reckless homicide resulted in fundamental error; and (2) the trial court abused its discretion by admitting evidence that Burnside was carrying a handgun without a license.[2] Because the strategic decision regarding which issues to raise on appeal is one of the most important decisions to be made by appellate counsel, appellate counsel's failure to raise a specific issue on direct appeal rarely constitutes ineffective assistance. *See Taylor v. State*, 717 N.E.2d 90, 94 (Ind. 1999). The Indiana Supreme Court has adopted a two-part test to evaluate the deficiency prong of these claims: (1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the unraised issues are

**2.** Burnside also argues that appellate counsel was ineffective by presenting an ineffective assistance of trial counsel argument on direct appeal. Given our resolution of the other issues presented and the fact that we are reversing and remanding based upon ineffective assistance of appellate counsel, we need not address this issue.

"clearly stronger" than the raised issues. *Bieghler v. State,* 690 N.E.2d 188, 194 (Ind. 1997), *reh'g denied, cert. denied,* 525 U.S. 1021, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998). If this analysis demonstrates deficient performance by counsel, the court then examines whether the issues that appellate counsel failed to raise "would have been clearly more likely to result in reversal or an order for a new trial." *Id.*

### 1. *Jury Instruction.*

 Burnside argues that his appellate counsel was ineffective because he failed to argue that the trial court committed fundamental error by improperly instructing the jury regarding self defense and the lesser included offense of reckless homicide. At the time of Burnside's offense, Ind.Code § 35–41–3–2(a) governed self defense and provided:

A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reasonably believes that that force is necessary to prevent serious bodily injury to himself or a third person or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting himself or his family by reasonable means necessary.

I.C. § 35–41–3–2 (1998) (subsequently amended by Pub.L. No. 59–2002, § 1 (eff. July 1, 2002); Pub.L. No. 189–2006, § 1 (eff. July 1, 2006)). A valid claim of self defense is a legal justification for an otherwise criminal act. *Henson v. State,* 786 N.E.2d 274, 277 (Ind.2003). A claim of self defense requires a defendant to have acted without fault, been in a place where he or she had a right to be, and been in reasonable fear or apprehension of bodily harm. *Id.*

 Reckless homicide is a lesser included offense of murder. *Davenport v. State,* 749 N.E.2d 1144, 1150 (Ind.2001), *reh'g denied.* The offense of reckless homicide is governed by Ind.Code § 35–42–1–5, which provides: "A person who recklessly kills another human being commits reckless homicide, a Class C felony." "A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind.Code § 35–41–2–2(c).

The jury instruction at issue provided:

During the trial, the issue of self-defense was raised. Self-defense is defined by law as follows: A person is justified in using reasonable force against another person to protect himself from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reasonably believes that such force is necessary to prevent serious bodily injury to himself or the commission of a forcible felony. The State has the burden of disproving this defense beyond a reasonable doubt.

The term "deadly force" is defined by law as meaning force that creates a substantial risk of serious bodily injury.

For a claim of the use of deadly force in self-defense to prevail, the evidence must establish that: 1. The defendant was in a place in which he had a right to be; 2. He did not provoke, instigate, or participate willingly in violence, and; 3. He had reasonable fear of death or great bodily harm.

You may determine whether the defendant is guilty of an offense which is not explicitly stated in the charge. The

offense you may consider is called an included offense. In the case before you, the difference between the charged offense and the included offense is that the included offense has a different mental state which if present reduces the severity of the charged offense from murder to reckless homicide.

The mental state that you would have to find to have been present is known as "recklessness." The term "reckless" means that a person engages in conduct in plain conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct. A person who recklessly kills another human being commits reckless homicide, a Class C felony.

In determining your verdict, you may proceed as follows: A. You should first determine whether you find beyond a reasonable doubt from all the evidence that: 1. The Defendant, Curtis Burnside; 2. Knowingly; 3. Killed; 4. Ernest Williams, a human being.

If you find that the State failed to prove beyond a reasonable doubt any one of these four essential elements, you must find the Defendant not guilty, and you need deliberate no further.

B. If you find that the State did prove beyond a reasonable doubt each of these four elements, you should next determine from all of the evidence whether the Defendant was acting in self-defense. If you find no credible evidence that the Defendant was acting in self-defense, you may find the Defendant guilty of Murder as charged and proceed no further.

C. If, on the other hand, you find that the Defendant was acting in self-defense, you should then determine whether his act constituted the use of deadly force as that term is defined elsewhere in these instructions. If you conclude that deadly force was used as self-defense, you should next determine from all the evidence whether the State proved beyond a reasonable doubt that this use of deadly force was not justified as self-defense as discussed elsewhere in these instructions. If you find that the State failed to prove beyond a reasonable doubt that the use of deadly force was not justified as self-defense (putting it another way, if you find that the Defendant used deadly force and that such force was justified), then you should find the Defendant not guilty by reason of justifiable self-defense and proceed no further.

D. If you find beyond a reasonable doubt that the State did prove beyond a reasonable doubt the existence of the four essential elements of the charge of murder, and you also find that the Defendant was acting in self-defense, and that he used deadly force, but you find that in his use of deadly force, the Defendant was acting recklessly, that is, that the Defendant was acting in plain, conscious, and unjustifiable disregard of harm that might result and that the disregard involved a substantial deviation from acceptable standards of conduct, you may find the Defendant guilty of reckless homicide, a Class C felony.

Transcript at 638–642.

According to Burnside, the instruction resulted in fundamental error because: (1) the instruction erroneously merged the separate concepts of self defense and reckless homicide into a single concept of reckless self defense; and (2) the instruction, particularly paragraph D, only allowed the jury to find Burnside guilty of reckless homicide if it first found that he was acting

in self defense.[3] The State correctly concedes that the instruction erroneously intermingled the concepts of self defense and reckless homicide and that paragraph D was erroneous. Under Paragraph D of the instruction, to find Burnside guilty of reckless homicide, the jury would have been required to find "the existence of the four essential elements of the charge of murder," that Burnside was acting in self defense, and that Burnside was "acting in plain, conscious, and unjustifiable disregard of harm that might result and that the disregard involved a substantial deviation from acceptable standards of conduct." Transcript at 641–642. However, as noted above, for the jury to find Burnside guilty of reckless homicide, it only needed to find that Burnside killed Williams by engaging in conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involved a substantial deviation from acceptable standards of conduct. See I.C. § 35–42–1–5. Burnside argues, and we agree, that "by requiring a finding of self-defense as a precondition to a reckless homicide verdict, the instruction deprived Burnside of his right to have the jury consider his guilt on reckless homicide as a lesser-included offense." Appellant's Brief at 11. We conclude that Burnside's appellate counsel was deficient by failing to raise this issue because it was significant and obvious from the face of the record and was clearly stronger than the issues raised in Burnside's direct appeal.

██ To succeed on a claim of ineffective assistance of appellate counsel, Burnside must also show that the issue "would have been clearly more likely to result in reversal or an order for a new trial." *Bieghler,* 690 N.E.2d at 194. The State argues that Burnside's claim of ineffective assistance of appellate counsel fails because his appellate counsel would not have succeeded on a claim that the instruction resulted in fundamental error.

██ The "fundamental error" rule is extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Boesch v. State,* 778 N.E.2d 1276, 1279 (Ind.2002), *reh'g denied.* "When determining whether a defendant suffered a due process violation based on an incorrect jury instruction, we look not to the erroneous instruction in isolation, but in the context of all relevant information given to the jury, including closing argument and other instructions." *Id.* (internal citations omitted). "There is no resulting due process violation where all such information, considered as a whole, does not mislead the jury as to a correct understanding of the law." *Id.*

The post-conviction court found that the instruction, read as a whole, adequately informed the jury "of when deadly force is justified." Appellant's Appendix at 161. However, the harm caused by Paragraph D relates to the offense of reckless homicide. According to the State, "the only possible harm from this otherwise correct self-defense instruction was that the jury could have found self-defense and still convicted [Burnside] of reckless homicide." Appellee's Brief at 11. We view the harm differently; the jury could have found that Burnside did not act in self defense and, as

---

3. Burnside also argues that his appellate counsel was ineffective for failing to argue that the instruction misstated the law of self defense and that the instruction erroneously shifted the burden of proof regarding the issue of self defense to Burnside. Given our resolution of Burnside's other arguments regarding the instruction, we need not address these arguments.

a result, could not find that he committed reckless homicide. We conclude that the instruction misled the jury as to a correct understanding of the law and resulted in fundamental error. Had appellate counsel raised this issue, the issue would have been clearly more likely to result in reversal or an order for a new trial, and Burnside was prejudiced by his appellate counsel's failure to raise this issue. *See, e.g., Fisher,* 810 N.E.2d at 680 (reversing the post-conviction court's denial of the petition for post-conviction relief where the trial court's refusal to instruct the jury on the lesser-included offense of reckless homicide was reversible error and appellate counsel's failure to present this claim on direct appeal amounted to ineffective assistance). The post-conviction court's denial of Burnside's petition for post-conviction relief on this issue is clearly erroneous.

### 2. *Admission of evidence.*

■ Because the issue may arise in future proceedings, we will address Burnside's argument that he received ineffective assistance of counsel when his appellate counsel failed to argue that the trial court abused its discretion by admitting evidence that Burnside was carrying a handgun without a license. During the State's cross examination of Burnside, the State asked, over Burnside's objection, if he had a license to carry his handgun. Burnside admitted that he did not have a license, and the trial court instructed the jury that "in the State of Indiana for a person to carry a handgun, a person is required by law to obtain a permit." Transcript at 504.

■■ Ind. Evidence Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Ind. Evidence Rule 404(b) "serves to prohibit a jury from making the 'forbidden inference' that because of a defendant's criminal propensity, he committed the charged act." *Bald v. State,* 766 N.E.2d 1170, 1173 (Ind.2002). However, Ind. Evidence Rule 404(b) does not bar evidence of uncharged criminal acts that are "intrinsic" to the charged offense. *Lee v. State,* 689 N.E.2d 435, 439 (Ind.1997), *reh'g denied.*

The evidence of Burnside's lack of a gun permit was intrinsic to the charged offense and relevant to Burnside's theory of self defense.[4] At the time of Burnside's offense, the statute governing self defense, Ind.Code § 35–41–3–2, provided:

(d) Notwithstanding subsections (a), (b), and (c) of this section, a person is not justified in using force if:

(1) he is committing, or is escaping after the commission of, a crime;

---

**4.** Burnside relies upon *Hill v. State,* 497 N.E.2d 1061, 1066–1067 (Ind.1986). However, Hill was decided prior to the enactment of the Indiana Rules of Evidence. Further, in Hill, evidence that the defendant was illegally carrying a gun when she shot her husband was admitted. *Hill,* 497 N.E.2d at 1066. The court held:

The admission of testimony of another offense is error. However, when the offense is minor and unlikely to weigh appreciably against defendant, the resulting prejudice does not arise to the grave peril which would require a reversal. *Mulligan v. State* (1986), *Ind.,* 487 N.E.2d 1309. We are satisfied that whether Mrs. Hill had a permit to carry the pistol with which she killed her husband counted for virtually nothing in the jury's verdict.

*Id.* at 1067. Thus, even in Hill, any error in the admission of the evidence was harmless.

(2) he provokes unlawful action by another person, with intent to cause bodily injury to the other person; or

(3) he has entered into combat with another person or is the initial aggressor, unless he withdraws from the encounter and communicates to the other person his intent to do so and the other person nevertheless continues or threatens to continue unlawful action.

I.C. § 35–41–3–2(d) (1998) (subsequently amended by Pub.L. No. 59–2002, § 1 (eff. July 1, 2002), and Pub.L. No. 189–2006, § 1 (eff. July 1, 2006); *see now* Ind.Code § 35–41–3–2(e)).

In interpreting this section and discussing jury instructions, the Indiana Supreme Court in *Mayes v. State*, 744 N.E.2d 390 (Ind.2001), held:

> [B]ecause a defendant is committing a crime at the time he is allegedly defending himself is not sufficient standing alone to deprive the defendant of the defense of self-defense. Rather, there must be an immediate causal connection between the crime and the confrontation. Stated differently, the evidence must show that but for the defendant committing a crime, the confrontation resulting in injury to the victim would not have occurred. Cf. *Roche v. State*, 690 N.E.2d 1115, 1124 (Ind.1997) ("A person who kills while committing or attempting to commit a robbery is a person who kills while committing a crime and so the defense of self-defense is not available."). Having reached this conclusion however does not mean we agree that Mayes is entitled to reversal and a new trial.

\* \* \* \* \* \*

The record shows that after Mary and her sister left Mayes' home and walked away, Mayes went back into the house and grabbed his jacket which contained a handgun. On the one hand, the fact that Mayes did not have a license to possess the weapon would seem to have no bearing on its use in Mary's death. On the other hand, the jury could have concluded that but for Mayes' possession of the unlicensed handgun, Mary would still be alive because Mayes' unlicensed handgun was required, by law, to be kept at his dwelling, on his property, or at his fixed place of business. *See* I.C. § 35–47–2–1. Ultimately it is left to the jury, the fact-finder in this case, to determine whether there is an immediate causal connection between Mayes' possession of an unlicensed firearm and Mary's death. This is not an issue that can be resolved by this Court as a matter of law. Cf. *Harvey [v. State*, 652 N.E.2d 876, 877 (Ind.Ct.App.1995) ] (finding that the trial court properly instructed the jury on the definition of self-defense, including the "committing a crime" provision, but erred by further instructing the jury that a person who possessed an unlicensed handgun could not claim self-defense). We conclude the trial court's jury instruction on self-defense was not erroneous.

*Mayes*, 744 N.E.2d at 394–395.

While the court in *Mayes* did not directly address the admissibility of the defendant's lack of a handgun permit, it is clear from the jury instruction discussion that the evidence was relevant to the self defense theory and admissible. Consequently, the trial court here did not abuse its discretion by admitting evidence of Burnside's lack of a handgun permit, and Burnside's appellate counsel was not ineffective for failing to raise this issue on appeal. The post-conviction court's denial of Burnside's petition for post-conviction relief on this issue was not clearly erroneous.

For the foregoing reasons, we reverse the post-conviction court's denial of Burn-

side's petition for post-conviction relief and remand for proceedings consistent with this opinion.

Reversed and remanded.

KIRSCH, C.J., and MATHIAS, J. concur.

**J.J., Appellant–Petitioner,**