## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Apr 17 2015, 9:56 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Michael J. Spencer
Monroe Co. Public Defender
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kenneth E. Aker, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | April 17, 2015 <br><br> Court of Appeals Case No. <br> 53A01-1409-CR-411 <br><br> Appeal from the Monroe Circuit Court III <br><br> The Honorable Kenneth G. Todd, Judge <br><br> Cause No. 53C03-1301-FB-106 |

**Friedlander, Judge.**

Kenneth Aker, Jr. appeals the sentence he received as a result of his plea of guilty to the offense of neglect of a dependent resulting in serious bodily injury, a class B felony.[1] Aker presents the following restated issues for review:

1. Did the trial court abuse its discretion in its identification of aggravating circumstances?

2. Did the trial court abuse its discretion in its identification of mitigating circumstances?

3. Is Aker's sentence inappropriate in light of the offense and his character?

We affirm.

The facts supporting Aker's conviction are that since 2001, he was employed as caregiver to T.W., who was fifty-three years old at the time of this offense. T.W. was afflicted with cerebral palsy and was unable to speak or care for herself. On January 26, 2013, T.W. was transported to Bloomington Hospital by emergency medical personnel after Aker called for assistance, reporting that T.W. was experiencing respiratory distress and became unresponsive. Upon her arrival, T.W. was examined by hospital personnel, who observed that she was in very poor health and had severe bedsores covering the lower half of her body. T.W. was pronounced dead shortly after her arrival.

---

[1] The version of the governing statute, i.e., Ind. Code Ann. § 35-46-1-4(b)(2) (West, Westlaw 2013), in effect at the time this offense was committed classified it as a class B felony. This statute has since been revised and in its current form reclassifies this as a Level 3 felony. *See* I.C. § 35-46-1-4(b)(2) (West, Westlaw current with legislation of the 2015 First Regular Session of the 119th General Assembly effective through March 24, 2015). The new classification, however, applies only to offenses committed on or after July 1, 2014. *See id.* Because this offense was committed before then, it retains the former classification.

[4] When questioned at the time, Aker claimed that T.W. had been afflicted with bedsores since he began caring for her in 2001, but that the sores normally healed after he applied topical medication. He claimed that in early January of 2013, T.W.'s bedsores "got out of hand." *Transcript* at 52. Although Aker admitted that he should have sought medical assistance because of T.W.'s condition, he failed to do so. He noted that in the week prior to her death, T.W. exhibited flulike symptoms and did not eat as much as she normally did. An autopsy performed on T.W. revealed she died of malnutrition and a partial bowel obstruction.

[5] Aker was charged with neglect of a dependent resulting in serious bodily injury, as a class B felony. Aker entered into a plea agreement whereby he agreed to plead guilty to the charge, in exchange for which the State agreed to an eight-year cap on his sentence. Under the agreement, the trial court retained discretion to determine the sentence within the agreed-upon range. Following a hearing, the trial court sentenced Aker to eight years in the Department of Correction, all executed.

1.

[6] Aker contends that the trial court abused its discretion in finding an element of the offense as an aggravating circumstance, i.e., that he neglected the care of a person who was unable to care for herself.

[7] Trial courts must enter sentencing statements whenever a sentence for a felony offense is imposed. *Anglemyer v. State,* 868 N.E.2d 482 (Ind. 2007), *clarified on*

*reh'g,* 875 N.E.2d 218. The statement must include a reasonably detailed recitation of the reasons for imposing the particular sentence selected. *Id.* If there is a finding of aggravating and mitigating circumstances, the statement must identify all significant aggravating and mitigating circumstances with an explanation of the characterization of the circumstances as either aggravating or mitigating. *Id.*

[8] We review sentencing decisions only for an abuse of discretion, except for the review-and-revise power provided for in Indiana Appellate Rule 7(B). *Id.* If the sentence is within the statutory range for the particular offense, we must determine only if there was an abuse of discretion. An abuse of discretion exists if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

[9] A trial court can abuse its discretion in sentencing in several ways, including entering a sentencing statement that explains the reasons for imposing a sentence accompanied by the finding of aggravating and mitigating factors that are not supported by the record, entering a sentencing statement that omits reasons clearly supported by the record and advanced for consideration, or citing reasons that are improper as a matter of law. *Id.* We will remand for resentencing if we cannot say with confidence that the trial court would have imposed the very same sentence had it considered the omitted reasons that are clearly supported by the record for sentencing. *Id.*

[10] Aker contends that the trial court relied upon an improper aggravating circumstance, which ultimately led to the imposition of two years less than the advisory sentence instead of a lesser sentence within the statutory range. When the trial court sentenced Aker, it found the following aggravating circumstances: 1) The amount of suffering endured by the victim; and 2) what Aker characterizes as the fact that the victim was incapable of caring for herself and entrusted her care to him. The trial court found several mitigating circumstances, including the following: 1) Aker presented a low risk of reoffending, and the crime was unlikely to recur; 2) Aker was genuinely remorseful; and 3) Aker's criminal history was relatively mild and included "no related prior convictions or prior criminal history … [t]hat would have any bearing at all on his sentence in this case." *Transcript* at 61.

[11] Aker challenges the aggravating factor that he describes as the fact that the deceased victim was incapable of caring for herself and entrusted her care to him. According to Aker, this is an element of his offense (i.e. "[a] person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally …"). I.C. § 35-46-1-4(a). Aker correctly observes that the trial court generally may not cite an element of the crime as an aggravator. *Gomillia v. State*, 13 N.E.3d 846 (Ind. 2014).

[12] When articulating its findings of aggravating and mitigating circumstances, the trial court stated:

> the worst thing about this case Mr. Aker is that this is a person incapable of caring for themselves and entrusted to your care and

> regardless of your, your life experiences or this past event that
> you say caused you to panic you did whatever your performance
> of duties prior to this time get to the point where you neglected
> the care of someone who was unable to care for themselves and
> allow them to perish in your, in your care due to neglect.

*Transcript* at 64. Read in isolation, the foregoing can arguably be interpreted as a finding that the victim was incapable of caring for herself and entrusted her care to Aker, which is an element of the offense of which Aker was convicted. Read in context, however, we are inclined to view this as the final portion of the court's comments finding the nature and circumstances of the crime as an aggravator. The comments immediately preceding those reproduced above included the following:

> [O]n the other hand and by the way it is difficult to look at the autopsy report[.] … The autopsy report indicates that there this [sic] large, I can't pronounce the word that Dr. Kohr uses, decubitus ulcer it says that there was a severe excoriation of the thighs and perineum no doubt related to the diarrhea that you described. He notes that in addition to that which I find to be of some interest is that there was the stomach contained only 50 milliliters of dark brown liquid and particular [sic] matter indicating no food. The bladder was empty and there was a large fecal impaction and then we have of course the sore. So however we got to this point in you saying, you describing this as things as getting out of hand and you panicking its apparent to the Court that at some point you became inattentive to her and that her last days on this earth were in fact painful and she couldn't help but, I don't see how you could say she could help but suffer.

*Id.* at 62-63. We conclude that the comments to which Aker objects were a part of the court's evaluation of the nature and circumstances of Aker's offense, which the court found to be aggravating. Of course, it is appropriate for a trial court to consider as an aggravating circumstance that the harm suffered by the

victim of the offense was significant and greater than the elements necessary to prove the commission of the offense. *See* Ind. Code Ann. § 35-38-1-7.1(a)(1) (West, Westlaw current with legislation of the 2015 First Regular Session of the 119th General Assembly effective through March 24, 2015); *Gomillia v. State*, 13 N.E.3d 846. The trial court did not err in its finding of aggravating circumstances.

## 2.

[13] Aker contends that the trial court abused its discretion in omitting as a mitigating factor that Aker's dependents would experience undue hardship as a result of his incarceration. As indicated above, the trial court's sentencing order is reviewed for an abuse of discretion. *Anglemyer v. State,* 868 N.E.2d 482. An abuse of discretion occurs when a decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* at 490 (quoting *K.S. v. State,* 849 N.E.2d 538, 544 (Ind. 2006)). A trial court abuses its discretion when it omits significant mitigating factors that are clearly supported by the record and advanced for consideration. *Anglemyer v. State,* 868 N.E.2d. 482. We note, however, that although a sentencing court must consider all evidence of mitigating factors presented by a defendant, it is not obligated to weigh or credit them in the manner a defendant suggests. *Scott v. State*, 840 N.E.2d 376 (Ind. Ct. App. 2006), *trans. denied.* Also, a sentencing court "need not consider, and we will not remand for reconsideration of, alleged mitigating circumstances that are highly disputable in nature, weight, or significance."

*Creekmore v. State,* 853 N.E.2d 523, 530 (Ind. Ct. App. 2006), *clarified on reh'g,* 858 N.E.2d 238.

[14] With respect to the significant mitigating circumstance that Aker contends the trial court omitted, our Supreme Court has stated, "[m]any persons convicted of serious crimes have one or more children and, absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship." *Dowdell v. State*, 720 N.E.2d 1146, 1154 (Ind. 1999). The only mention of Aker's children in the context of mitigating circumstances came during counsel's final argument at the sentencing hearing, where he stated as follows: "The other thing is he had two minor children that he had shared [sic] of and that is a mitigating factor he should be able to be out to help provide and support for those children." *Transcript* at 60. The brief mention of Aker's children alludes to no "special circumstances" at all, much less those that would compel the court to find as a mitigator that Aker's incarceration would impose "undue hardship" within the meaning of *Dowdell*. The trial court did not err in the finding of mitigating circumstances.

3.

[15] Aker contends that his sentence is inappropriate in light of the nature of his offense and his character. Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences. *See Knapp v. State*, 9 N.E.3d 1274 (Ind. 2014), *cert. denied*, 2015 WL 133288 (Jan. 12, 2015). Pursuant to Ind. Appellate Rule 7, the Supreme Court authorized this court to perform the same task. *Cardwell v. State*, 895 N.E.2d 1219 (Ind.

2008). Per App. R. 7(B), we may revise a sentence "if after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Inman v. State*, 4 N.E.3d 190, 203 (Ind. 2014) (quoting App. R. 7). "Sentencing review under Appellate Rule 7(B) is very deferential to the trial court." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). Aker bears the burden on appeal of persuading us that his sentence is inappropriate. *Conley v. State*, 972 N.E.2d 864.

[16] The determination of whether we regard a sentence as appropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013) (quoting *Cardwell v. State,* 895 N.E.2d at 1224). Moreover, "[t]he principal role of such review is to attempt to leaven the outliers." *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013). It is not our goal in this endeavor to achieve the perceived "correct" sentence in each case. *Knapp v. State*, 9 N.E.3d 1274. Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State,* 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original). Our Supreme Court has indicated that when analyzing the appropriateness of a criminal sentence, there is "no right answer ... in any given case." *Brown v. State*, 10 N.E.3d 1, 8 (Ind. 2014) (quoting *Cardwell v. State,* 895 N.E.2d at 1224). Rather, appellate review and, where appropriate, revision

"ultimately boils down to the appellate court's 'collective sense of what is appropriate, not a product of a deductive reasoning process.'" *Id.* (quoting *Cardwell v. State*, 895 N.E.2d at 1225.

[17] In order to assess the appropriateness of a sentence, we first look to the statutory ranges established for the classification of the relevant offenses. Aker was convicted of a class B felony – neglect of a dependent resulting in serious bodily injury. The advisory sentence for a class B felony is ten years, with the minimum and maximum sentence being six and twenty years, respectively. Aker was sentenced to two years less than the advisory term, i.e., eight years.

[18] Regarding the nature of his offense, Aker was the paid custodian and caregiver of T.W., a woman with severe cerebral palsy who was entirely dependent upon him for her care. She was unable to speak or care for herself and was confined to a bed or wheelchair. Although it appears that Aker cared for her adequately for a period of years, at some point he began to neglect her care such that she developed severe bedsores covering the lower half of her body, one of which was large enough and deep enough that it ate deeply into the muscle beneath it. The photos of her injuries indicate that she almost surely suffered severe pain as a result. Although Aker claimed that he attempted to treat the bedsores, he acknowledged that they eventually "got out of hand", which understates the severity of her condition as reflected in post-mortem photos. *Transcript* at 52. Yet, he failed to seek medical help until he perceived that she was having trouble breathing. Moreover, under Aker's care, by the time he summoned medical assistance as a result of T.W.'s breathing difficulties, T.W. suffered

from extreme malnutrition and a bowel obstruction, with those conditions being severe enough to cause her death. In summary, a disabled woman who depended entirely upon Aker for her care and well-being died a premature and painful death entirely as a result of his extreme neglect.

[19] As for Aker's character, the trial court aptly noted that he has an almost inconsequential criminal history, consisting of a long-ago misdemeanor conviction of operating while intoxicated and a more recent charge of misdemeanor check deception, which was ultimately dismissed. The trial court's finding that he is a low risk to reoffend is well grounded in the evidence in this case. It also appears that Aker provided adequate care, and perhaps better than adequate care, for T.W. for a number of years before the recent precipitous decline in care that led to her death. The trial court accepted Aker's expression of remorse as genuine, and we see no reason to quibble with that finding. We cannot, however, ignore the way T.W.'s life ended and the role Aker played in her death. Not only did he cease providing adequate care, but he also ignored very obvious symptoms that would indicate to even a casual observer that T.W. was enduring great suffering. Moreover, he acknowledged that the reason he did not act more quickly on her behalf was rooted in his own self-interest, i.e., he was afraid he would be blamed for her poor condition. The decision to elevate his own self-interest above T.W.'s great suffering and even survival does not reflect well on his character. In the final analysis, we find no fault in the imposition of a sentence that, although the maximum permissible under the terms of the plea agreement, was nevertheless below the advisory

sentence for a class B felony. We do not believe that Aker's character and the nature of his offense compel this court to conclude that an eight-year sentence is inappropriately long.

[20] Judgment affirmed.

Baker, J., and Najam, J., concur.