# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 14 2017, 5:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan Shipley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Shirley, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | September 14, 2017 <br><br> Court of Appeals Case No. <br> 49A04-1611-CR-2514 <br><br> Appeal from the Marion Superior Court. <br> The Honorable Marc T. Rothenberg, Judge. <br> Trial Court Cause No. <br> 49G02-1508-MR-27612 |

**Sharpnack, Senior Judge**

# Statement of the Case

[1] Michael Shirley, Jr. appeals his conviction of murder.[1] We affirm.

# Issues

[2] Shirley presents two issues for our review, which we restate as:

> I. Whether there was sufficient evidence to rebut Shirley's claim of self-defense.
>
> II. Whether the combination of a jury instruction and the prosecutor's statement produced fundamental error.

# Facts and Procedural History

[3] In August 2015, Shirley lived with his grandmother, Mildred Woodford, and his two uncles, Derrick and Roderick Woodford. On August 1, 2015, Shirley and Roderick were at home drinking. Bernita Woodford, Mildred's daughter, and her boyfriend, James Woodard, stopped by the house at approximately 3:00 p.m. When Bernita arrived, Shirley told her he was drunk.

[4] Bernita and James left to go to a reunion and returned at approximately 10:30 p.m. to Mildred's house where they picked up Derrick and took him to a store. When they returned from the store, two women ran from the house yelling that people were fighting. As the front door opened, Bernita saw Shirley and Roderick "tussling." Tr. Vol. II, p. 55. Bernita saw no punches being thrown, and neither James nor Bernita saw any weapons. James ran into the house and

---

[1] Ind. Code § 35-42-1-1 (2014).

found both men "short winded" but separated and the living room in disarray. *Id.* at 27. Shirley was in the living room by the front door and Roderick was across the small living room near his bedroom door.

[5] In the meantime, Bernita went around to the back of the house to Mildred's room and told her to call the police. While Bernita was in the back room with Mildred and James was exiting the house to go back to the car, all three heard gunshots. James ran back into the house and saw Roderick sitting on the floor by the door to his bedroom; he did not see Shirley. When Bernita heard the gunshots, she ran into the kitchen to call the police. As she was doing so, she heard Shirley ask, "You motherf***ers calling the police on me?" *Id.* at 58. When Shirley said this to Bernita, he was in the dining room by the closet where he kept his belongings. A police search of the closet later that night uncovered an athletic shoe that was buried under clothing and contained a handgun. Testing revealed the gun was the one used to shoot Roderick.

[6] Meanwhile, James went out to the car to tell Derrick that he believed Roderick had been shot. Upon re-entering the house, James saw that Roderick had moved into his bedroom and was in a fetal position on the bedroom floor. James again went to the car to tell Derrick about the situation. On his way back into the house, he passed Shirley who got into his truck and drove off.

[7] When Roderick was picked up to be carried to the ambulance, a knife was found underneath him. Roderick was taken to the hospital where he later died from a gunshot wound to the abdomen.

Shirley went to a friend's house for the night, and then he and his girlfriend went to a motel where he was found and arrested on August 3. Based upon this incident, Shirley was charged with murder. At trial, Shirley claimed that he shot Roderick in self-defense. The jury returned a verdict of guilty, and the court sentenced Shirley to fifty-four years. This appeal followed.

# Discussion and Decision

## I. Self-Defense

Shirley does not dispute the fact that he shot and killed his uncle Roderick. Rather, he challenges the sufficiency of the evidence contending the State failed to rebut his claim of self-defense.

A claim of self-defense can serve as a legal justification for an otherwise criminal act. *Burnside v. State*, 858 N.E.2d 232, 239 (Ind. Ct. App. 2006). Indiana Code section 35-41-3-2 (2013) provides that a person may use reasonable force against another to protect himself from what he reasonably believes to be the imminent use of unlawful force.

In order to prevail on a claim of self-defense, a defendant must show: (1) he was in a place where he had a right to be; (2) he did not provoke, instigate, or participate willingly in the violence; and (3) he had a reasonable fear of death or great bodily harm. *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002). Once self-defense has been raised, the State must negate at least one of the necessary elements either by rebutting the evidence directly with an affirmative showing

the defendant did not act in self-defense, or by simply relying on the evidence in its case-in-chief. *Cole v. State*, 28 N.E.3d 1126, 1137 (Ind. Ct. App. 2015).

[12]  In reviewing a challenge to the sufficiency of the evidence to rebut a claim of self-defense, we use the same standard as for any claim of insufficient evidence. *Id.* at 1136-37. We neither reweigh the evidence nor judge the credibility of the witnesses; rather, we look solely to the evidence most favorable to the judgment with all reasonable inferences to be drawn therefrom. *Miller v. State*, 720 N.E.2d 696, 699 (Ind. 1999). If there is sufficient evidence of probative value to support the conclusion of the trier of fact, the verdict will not be disturbed. *Cole*, 28 N.E.3d at 1137. A conviction in spite of a claim of self-defense will be reversed only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. *Wilson*, 770 N.E.2d at 800-01.

[13]  Here, the State produced sufficient evidence to rebut Shirley's claim of self-defense. The evidence showed that Shirley was a willing participant in the altercation when he was seen by witnesses fighting with Roderick. That initial altercation had ended when James ran into the house and found Shirley and Roderick separated. Shirley was in the living room by the front door of the house, and Roderick was in the living room across the room just outside his bedroom door. James then stepped out of the house and heard the gunshots. When he re-entered the house, he found Roderick still in the spot by his bedroom door but now sitting on the floor, with no sign of Shirley.

[14] Although there is no dispute that Shirley had a right to be in Mildred's house, the only evidence that he acted without fault or that he had a reasonable fear of great harm was from his own self-serving testimony. Shirley testified at trial that he and Roderick got into an argument and that Roderick punched him in the mouth, forehead and eye and choked him. He further testified that Roderick tried to stab him with a knife, at which point he pulled out his gun and fired until Roderick stopped trying to stab him.

[15] A jury could have reasonably rejected Shirley's self-defense claim. At the time James and Bernita heard the gunshots, the altercation appeared to have ended. Shirley and Roderick were separated and across the room from each other where Roderick presented no immediate danger to Shirley, yet Shirley fired five shots. The firing of multiple shots undercuts a claim of self-defense. *Randolph v. State*, 755 N.E.2d 572, 576 (Ind. 2001). Immediately after the shots were fired, Roderick was located in the same spot by his bedroom door. The jury was free to disbelieve Shirley's self-serving evidence, which it apparently did. *See McCullough v. State*, 985 N.E.2d 1135, 1139 (Ind. Ct. App. 2013) (stating jury is under no obligation to credit defendant's evidence), *trans. denied*. Additionally, the jury was free to consider Shirley's act of fleeing the house and staying at a friend's and then a motel as indications of his guilty conscience. *See Myers v. State*, 27 N.E.3d 1069, 1077 (Ind. 2015) (evidence of flight and attempt to avoid arrest may be considered as circumstantial evidence of consciousness of guilt). Furthermore, concealment of the handgun in a shoe under a pile of clothing in his closet added to the reasonable inference of guilt.

There is sufficient probative evidence from which the jury could conclude that Shirley did not act in self-defense and that the State rebutted Shirley's claim of self-defense beyond a reasonable doubt.[2]

## II. Fundamental Error

### A. Jury Instruction

For his second claim of error, Shirley asserts that an allegedly erroneous jury instruction and comments by the prosecuting attorney combined to produce fundamental error. We first note, and Shirley concedes, that he did not object to the instruction or the comments. Failure to object to an instruction at trial results in waiver of the issue on appeal. *Clay v. State*, 766 N.E.2d 33, 36 (Ind. Ct. App. 2002). Likewise, failure to make a contemporaneous objection at trial to prosecutorial statements waives the issue for appeal. *Bald v. State*, 766 N.E.2d 1170, 1172-73 (Ind. 2002).

Thus, in order to avoid waiver, Shirley claims the resulting error was fundamental. The fundamental error doctrine is extremely narrow and applies only when the error amounts to a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Lehman v. State*, 926 N.E.2d 35, 38 (Ind. Ct. App.

---

[2] In its brief and citing federal cases for support, the State argues the jury was free to consider Shirley's testimony as affirmative evidence of his guilt once it determined that he was not a credible witness and that his testimony was not truthful. However, we need not consider the merits of this argument because the State otherwise presented sufficient evidence to rebut Shirley's claim of self-defense.

2010), *trans. denied*. This doctrine is available only in egregious circumstances. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010).

[19] With regard to the jury instruction, Shirley argues the trial court erred in giving the instruction because it was neither supported by the evidence nor complete in its explanation of the law. We review the trial court's decisions on instruction of the jury for an abuse of discretion. *Treadway v. State*, 924 N.E.2d 621, 636 (Ind. 2010). When determining whether a trial court erroneously instructed the jury, we consider the following: (1) whether there was evidence presented at trial to support the giving of the instruction; (2) whether the tendered instruction correctly states the law; and (3) whether the substance of the tendered instruction was covered by other instructions that were given. *Mayes v. State*, 744 N.E.2d 390, 394 (Ind. 2001). In this case, Shirley is concerned with the first two factors.

[20] At Shirley's trial, the court gave the following instruction on self-defense:

> It is an issue whether the Defendant acted in self-defense.
>
> A person is justified in using reasonable force against another person to protect himself or a third person from what the person reasonably believes to be the imminent use of unlawful force.
>
> However, a person is justified in using deadly force and does not have a duty to retreat, if he reasonably believes that deadly force is necessary to prevent serious bodily injury to himself or a third person or to prevent the commission of a felony.
>
> A person may not use force if:
>
> - He is committing a crime that is directly and immediately related to the confrontation;

- He is escaping after the commission of a crime that is directly and immediately connected to the confrontation;

- He provokes unlawful action by another person, with intent to cause bodily injury to the other person; or

- He enters into combat with another person or is the initial aggressor unless he withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action.

The State has the burden of proving beyond a reasonable doubt that the Defendant did not act in self-defense.

Appellant's App. Vol. II, p. 119.

[21] Shirley claims that the last bullet point of the instruction was improper because there was no evidence that he instigated or participated willingly in the fight that preceded his shooting of Roderick. Bernita and James both testified that they saw Shirley and Roderick fighting and wrestling prior to the shooting when they returned from taking Derrick to the store. When the men were separated and across the living room from one another and James was satisfied the fight was over, he left the house and then heard the gunshots. Shirley, on the other hand, gave self-serving testimony that Roderick was the initial aggressor and that the fight and shooting were one continuous event concluding with him shooting Roderick because Roderick attempted to stab him. Thus, Shirley's testimony, along with the testimony of Bernita and James, supported the giving of this portion of the self-defense instruction.

[22] Shirley also asserts that the trial court's instruction incorrectly states the law. Particularly, he maintains that the instruction is incomplete because it does not give the legal definition of the phrase "enters into combat."

[23] We first observe that the trial court's instruction tracks the language of the self-defense statute which provides, in pertinent part:

> (g) Notwithstanding [certain circumstances not applicable here], a person is not justified in using force if:
>> (1) . . .
>> (2) . . .; or
>> (3) the person has entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action.

Ind. Code § 35-41-3-2.

[24] Generally, it is not error to instruct the jury consistent with applicable statutes. *Wooley v. State*, 716 N.E.2d 919, 926 (Ind. 1999). However, relying on *Wooley*, Shirley alleges that the phrase "enters into combat" has a "special legal definition" that the trial court was required to use to properly instruct the jury. Appellant's Br. pp. 33-34. In support of his argument, Shirley points to the Court's explanation that "The legislature has chosen to require both an 'initial aggressor' and those who 'enter into combat' (i.e., mutually willing combatants) to declare an armistice before they may claim self-defense." *Wooley*, 716 N.E.2d at 926.

[25] The parenthetical used in *Wooley* is not a special legal definition. The term "i.e.," is an abbreviation for a Latin expression meaning "that is" – it introduces a rewording or clarification of a word. MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/i.e. (last visited September 7, 2017). While these explanatory phrases/parentheticals are helpful, the mere insertion into its opinion of a clarifying term or phrase does not indicate that our Supreme Court has decreed that phrase to be a special legal definition or that trial courts commit error if they fail to include the term or phrase when instructing a jury.

[26] Thus, there being evidence to support the giving of the instruction which correctly states the law, we conclude there was no error.

## B. Prosecutorial Comments

[27] Shirley contends that a statement of the prosecuting attorney combined with the court's alleged instructional error, discussed *supra*, amounts to fundamental error. If a defendant properly raises and preserves the issue of prosecutorial misconduct, the reviewing court must determine: (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected. *Isom v. State*, 31 N.E.3d 469, 490 (Ind. 2015), *cert. denied*, 136 S. Ct. 1161, 194 L. Ed. 2d 175 (2016). However, our standard of review is different where a claim of prosecutorial misconduct has not been properly preserved. In that instance, the defendant must establish not only the grounds for the misconduct but also the additional grounds for

fundamental error. *Id.* To be deemed fundamental, the error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process. *Id.*

[28] During the rebuttal phase of closing arguments, the prosecutor stated:

> This wasn't self defense [sic]. He wants you to believe that he sat there and passively just did this (Demonstrating). That's what he did. He passively held his hands up while he was punched in the mouth, while he was punched in the head, while he was choked out, and while a knife came out to come after him. But I would like for you to — his uncle was able to punch him — according to him, punch him two times and choke him out. He couldn't stop that, but he was able to stop that knife from even nicking him anywhere during this fight.
>
> We know there was a fight. No one is denying there was a fight. The girls run out of the house and say, They're fighting [sic]. Bernita sees tussling. There was a fight. There was — right when James got in there because they had been fighting.
>
> But do you know why he has to be so passive when he talks to you about what happened during that fight? It's because of the same self defense [sic] instruction that [defense counsel] just talked about.
>
> A person may not use force if he enters into combat with another person or is the initial aggressor unless he withdraws from the encounter and communicates his intent to do so. If you believe this was mutual combat, the Defendant cannot claim self defense [sic]. [Defense counsel] read part of that instruction to you. You're going to get the entire instruction from the Court. And I ask you to think about that when you go back there because the Defendant had to have been passively just being like, Oh. Oh, he hit me again. Oh my god. I'm being choked out, in order for him to be able to claim self defense [sic].

Tr. Vol. III, pp. 56-58. Based upon these comments, Shirley claims the State incorrectly informed the jury that Shirley had to remain passive to claim self-defense.

[29] "Prosecutors are entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable." *Cooper v. State*, 854 N.E.2d 831, 836 (Ind. 2006). In his own closing remarks, defense counsel focused on two points: (1) the portion of the self-defense instruction that states a person is justified in using deadly force, and does not have a duty to retreat, if he reasonably believes that deadly force is necessary to prevent serious injury and (2) the State has the burden of proving beyond a reasonable doubt that Shirley did not act in self-defense. Defense counsel summarized the evidence he believed showed that the State had not disproved that Shirley acted in self-defense and emphasized that there were no witnesses to the incident except Shirley and that a knife containing Roderick's DNA was found under his body. Accordingly, on rebuttal the prosecutor countered with a different characterization of the evidence than set forth by the defense and questioned Shirley's testimony that Roderick was the initial aggressor, was the only willing participant in the ensuing fight, and tried to stab Shirley with a knife. Thus, the portion of the State's rebuttal closing argument at issue here was a permissible response to defense counsel's characterization of the evidence during closing argument.

[30] Further, we note that the court preliminarily instructed the jury that the attorneys' final arguments are not evidence, that in their final arguments the

attorneys are permitted to characterize the evidence, discuss the law, and attempt to persuade the jury to a particular verdict, and that the jury may accept or reject these arguments. Appellant's App. p. 106. Additionally, the jury received a final instruction informing them that statements by the attorneys are not evidence. *Id.* at 114. Jurors are presumed to follow the court's instructions. *Carpenter v. State*, 15 N.E.3d 1075, 1078 (Ind. Ct. App. 2014), *trans. denied*.

[31] Therefore, having found neither instructional error nor prosecutorial misconduct, we find nothing about the combination of the two to be so egregious as to rise to fundamental error.

# Conclusion

[32] For the reasons stated, we conclude that the State presented sufficient evidence to rebut Shirley's claim of self-defense and that no fundamental error resulted from the trial court's instruction to the jury or the prosecutor's comments.

[33] Affirmed.

Robb, J., and Bradford, J., concur.